# Commonwealth *v.* Reeves, Appellant.

*Evidence—Cross-examination—Hostile witness—Surprise—Leading questions—Not bound by testimony—Discretion of court—Abuse—Appeal—Criminal law—Murder—Testimony of witness before coroner.*

1. The rule that a party calling a witness is not permitted to ask leading questions, and is bound by his testimony, is liberally construed in modern practice. It apparently proceeds upon the theory that a rigid adherence in practice in ordinary cases would be mala fides to the tribunal, and the weight of authority is in favor of the rule that where a party is surprised in the testimony of a witness unexpectedly turning hostile, counsel may exercise the right of cross-examination of the witness, or impeach his testimony by other witnesses. Such exceptions have been recognized in Pennsylvania, and are permitted, to prevent a failure of justice. Whether such practice will be permitted, is within the sound discretion of the court, and its action will not be reversed by the appellate court unless there is an abuse of that discretion.

2. Where, in a murder case, a witness for the Commonwealth, is shown to have given testimony before the coroner, directly opposed to that which he gave at the trial, the trial court does not abuse its discretion in permitting his cross-examination by the Commonwealth, when the latter is taken by surprise, especially where the witness testified that the evidence given before the coroner was correct and thereby made it substantive evidence.

*Criminal law—Murder—First degree—Second degree—Charge of court—Harmless errors.*

3. Where the evidence, in a trial for murder, is sufficient to support a verdict of murder in the first degree, and the defendant is convicted of murder in the second degree, the trial judge cannot be convicted of error in submitting the evidence as to murder in the first degree to the jury, and in pointing out to them the distinctions in the several degrees of murder.

*Practice, Supreme Court—Exceptions taken to charge—Rule enforced.*

4. The rule requiring exceptions to be taken to the charge of the court will be enforced by the Supreme Court on hearing of appeal.

Argued March 22, 1920. Appeal, No. 200, Jan. T., 1920, by defendant, from judgment of O. & T. Phila. Co., Feb. T., 1919, No. 478, on verdict of murder of the second degree in case of Commonwealth v. William Reeves. Before BROWN, C. J., STEWART, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Indictment for murder. Before BALDRIGE, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Verdict of murder of the second degree on which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were the rulings and instructions set forth in the opinion of the Supreme Court.

*Michael J. O'Callaghan,* with him *Edward W. Wells,* for appellant.

*William Findlay Brown,* Assistant District Attorney, with him *Samuel P. Rotan,* District Attorney, for appellee.

OPINION BY MR. JUSTICE KEPHART, May 3, 1920:

The rule that the party calling a witness is not permitted to ask leading questions and is bound by his tes-

timony, is liberally construed in modern practice: Gantt
v. Cox & Sons Co., 199 Pa. 208.  It apparently proceeds
upon the theory, as stated by text writers, that a rigid
adherence to the practice in ordinary cases would be
mala fides to the tribunal, and the weight of authority
is in favor of the rule that, where a party is surprised
in the testimony of a witness by his unexpectedly turn-
ing hostile, counsel may exercise the right of cross-ex-
amination of the witness, or impeach his testimony by
other witnesses.  Such exceptions have been recognized
in Pennsylvania and are permitted, to prevent a failure
of justice: Cowden v. Reynolds, 12 S. & R. 281; 1 Green-
leaf on Evidence, sec. 444; Bank of Northern Liberties
v. Davis, 6 W. & S. 285; McNerney v. Reading City, 150
Pa. 611; Commonwealth v. Wickett, 20 Pa. Superior
Ct. 350.  Whether such practice will be permitted is
within the sound discretion of the court, and its action
will not be reviewed by this court unless there is an
abuse of that discretion.

In the present case, the Commonwealth laid the foun-
dation for the cross-examination of the witness, Thomas,
as a hostile witness.  He had previously testified before
the coroner; and at the later trial, his testimony, on the
same material points, was directly opposed to that given
on his former testimony.  The court did not abuse its dis-
cretion in permitting the Commonwealth to cross-exam-
ine the witness.  Moreover, the witness testified that the
evidence given before the coroner was correct and there-
by made it substantive evidence, with the exception
of some minor details.

The defendant was convicted of murder in the second
degree, and many assignments relate to the charge of
the court.  We must enforce the rule relating to excep-
tions taken to the charge.  None was taken here except
that which relates to the instruction that the jury might
find a verdict of murder in the first or second degree.
The charge of the court, on this phase of the case, except-
ed to, was as follows: "The Commonwealth contends

that that testimony is sufficient to warrant you in finding that there was this formed design upon the part of the defendant, and that it was a wilful and deliberate murder and that he pointed the revolver with the intent to take life. Of course, if a man points a deadly weapon at a vital part of a man's body, you can infer that there was an intent to take life. If you find present all the ingredients to which I have referred, that there was this wilful, deliberate, premeditated, felonious and malicious murder, with the specific intent to take life, that this man had an opportunity to think about it and deliberate over it and formed his plan, and carried it into effect, understanding the effect of it, and did it with a wicked heart, then that would be murder in the first degree. On the other hand, if you think that all the elements that I have just referred to were present, but that he did not intend to take life and only intended to do grave bodily injury, then you can find a verdict of guilty of murder in the second degree." This was a correct statement of the law as it applied to the facts in the case. There was sufficient evidence before the court for the jury to return a verdict of murder in the first degree. There had been a quarrel between deceased and appellant on December 24, 1918, at which time deceased fired a shot, presumably at appellant. Between that period and the time Robinson, the deceased, was killed, appellant purchased a revolver. On the morning of the 26th of December, a shot was fired in the house in which appellant and deceased lived, and thereafter deceased ran from the house pursued by appellant for nearly a block, who fired two shots, the last one just as deceased entered a narrow alley, nearly a block from his home. He was removed to the hospital where he died within a few minutes. The evidence in the case shows all the ingredients of murder in the first degree. That a lower degree was found did not lessen the fact that appellant could have been convicted of murder in the first degree, and the court was correct in charging the jury as referred to in

the assignment, and in pointing out the distinctions there made in the several degrees.

There is no merit in the assignment of error as to the testimony of Mrs. Robinson; it was confined to what she actually saw.

The charge of the court presented both sides of the case fairly, and, while there might have been an inaccuracy of statement as to the number of shots fired by deceased a day or two before the fatal shooting, the court does, in its charge, comment on the correct number when it refers to appellant being shot at a couple of times by deceased as he crawled under the bed. The jury clearly understood the facts.

The assignments of error are overruled, the judgment is affirmed.