## Rosenthal's Estate

620

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*Harold C. Cohen, Marshall A. Coyne,* and *David J. Smyth,* for exceptants.

*Leslie M. Swope* and *W. LeRoy McKinley,* contra.

BOLGER, J., December 15, 1939.—This contest involves the dangerous and suspicious act of a man who, without other witnesses present, draws a codicil to a will in his own favor, for execution by an old lady. Proponent was not of testatrix's blood, but was closely associated with her. The disputed document consists of two typewritten sheets physically connected only by a simple clip. Although a rather exhaustive search was made by several disinterested witnesses to discover it after testatrix's death, it was subsequently found by proponent when alone in an open letter file in testatrix's home. These circumstances result in the proponent having to carry a

heavy burden, the responsibility for which must be placed at his own door. In addition thereto, the subscribing witness, an employe of testatrix and a business associate of proponent, contradicted himself in a collateral proceeding prior to the hearing. He said that he could not tell whether testatrix had one, two, or five papers in her hand when she asked him to serve as a witness because he did not look, and that testatrix did not at that time tell him that the instrument that he was witnessing was of a testamentary character. Before the hearing judge he said he had refreshed his recollection following his earlier testimony and that, as a result thereof, he remembered that there was more than one sheet of paper because "There was another leaf covering the top of what was on that paper", which latter leaf he and testatrix signed, because when he picked them up "it didn't fall apart"; and that testatrix told him that "she was going to make some changes in her will" and asked him to witness her signature.

On the other hand, there is no allegation that testatrix was of weakened mind. It is clear also that proponent was a favorite of testatrix, and while not of her blood, yet a natural object of her solicitude. He had been in close and constant association with testatrix's husband and herself in the former's lifetime, and after his death, with testatrix herself. The record contains nothing in our opinion to substantiate anything but that the utmost propriety and regularity existed in this relationship. We have the testimony of at least three credible disinterested witnesses that testatrix, at times auspicious to the execution of the questioned codicil, expressed her intention to further provide for proponent by her will.

Instancing the value of this testimony, John J. Mitchell, Jr., a reputable member of this bar, and at the time counsel for decedent, testified that on March 5th or 10th, anterior to the execution of the codicil, testatrix said to him:

" 'I have made the Girard Trust Company, Frank Behring and my brother, Sydney Dreifus, my executors and trustees, but now that I have become better acquainted with the First National Bank and see how nicely they handled Henry's estate, I want the Girard Trust Company taken out and the First National Bank substituted.' She said, 'Further than that, I am only leaving Frank Behring $5000, but I am going to make some further provision for him.' "

Mr. Mitchell then stated that at a time subsequent to the execution of the questioned codicil, he had had the following conversation with testatrix:

"Then I said, 'By the way, we have never got together about that will, the changes you wanted to make in your will.' She said, 'Well, that has been taken care of.' I said, 'Who did that for you?' She said, 'Mr. Behring,' or Frank, as she described him.

"Q. That was on June 19th?

"A. That was June 19, 1937, in the early afternoon."

This evidence, coupled with the extent of the gift (one half of the income until testatrix's grandchildren attain their majority) in comparison with the size of the estate and considering the other natural objects of the testatrix's bounty, indicates that while proponent benefits considerably under this instrument, nevertheless, it is not to any degree unconscionable or such as to evidence per se an overreaching on his part. The previous discovery of a carbon copy of the disputed codicil by disinterested witnesses in testatrix's safe in her home is also a vital fact. The expert testimony comparing and tying in the carbon pages with those of the original is clear, convincing, and persuasive. This evidence is admissible: Baker's Appeal, 107 Pa. 381.

This review of proponent's uncontradicted evidence definitely overcomes any suspicion aroused by the fact that proponent was the scrivener of the questioned codicil.

The opinion of the hearing judge recites certain elements in the subject matter of the signed and undisputed

second page which connect the first page with it by internal sense. Counsel for proponent advances two other elements, namely, that page 2 only changes the executors from those nominated in an undisputed will, while page 1 similarly changes the trustees, and the second page waives bond for both executors and trustees, whereas the substituted corporate cotrustee is appointed only on the first page. We subscribe to this most important finding of the hearing judge that the disputed first page is definitely connected with the second page by internal sense. The coherence and adaptation of parts is inescapable.

The contradictory character of the testimony of the subscribing witness is unimportant in the light of the admitted genuineness of testatrix's signature, and other elements, particularly the coherent and adaptable connection between the two pages, including the questioned as well as the unquestioned page.

The testimony in the collateral proceeding was admissible to impair the credibility of the witness in this proceeding. But its effect or weight could go no further. It cannot now be substituted for the witness' evidence before the hearing judge: Smith v. Price, 8 Watts 447; nor could it be submitted to a jury as substantive evidence: Commonwealth v. Wickett, 20 Pa. Superior Ct. 350, 354; Smith v. Price, supra. Had he admitted at the hearing that his earlier testimony was correct (Commonwealth v. Reeves, 267 Pa. 361, 363), or that there was but one page before him, such declarations would constitute positive testimony against the validity of the questioned page and would require a different finding. However, this he did not do.

The references cited by proponent in support of his contention that proponent's innocence must be presumed, and that the burden is upon contestants to prove the fraud and forgery they allege, are applicable: Wikoff's Appeal, 15 Pa. 281; Stewart's Estate, 149 Pa. 111; Stephenson's Estate, 6 Pa. C. C. 628. We find with the hearing judge that contestants failed in this respect.

On the whole, our study of the record convinces us beyond question that the disputed page is genuine. Were proponent the insidious rogue contestants attempt to picture him—and they have not so satisfied us—the fabric of proponent's case defies the discovery therein of any loophole created by his evil genius. As the hearing judge well said, the "evidence would not support a finding by a jury against the codicil."

We feel that the costs of this appeal should be borne by the estate and not contestants. The hearing judge does not object.

The fifth exception as to costs is sustained. All other exceptions are dismissed, and the decree of the hearing judge dismissing the appeal from the register of wills is confirmed.