Commonwealth *v.* Gomino, Appellant.

Argued November 13, 1962; reargued December 13, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*H. David Rothman,* for appellant.

*Martin Lubow,* Assistant District Attorney, with him *Edward C. Boyle,* District Attorney, for Commonwealth, appellee.

OPINION BY ERVIN, J., March 19, 1963:

The indictment in this case charged that the appellant, Peter Gomino, on the 22nd day of August, 1960, did deal in, dispense, sell, deliver, distribute, prescribe,

traffic in and give away a quantity of a certain drug, compound, substance and preparation commonly known as morphine, being and containing a compound and derivative of opium. He was tried by a jury and found guilty. After the dismissal of his motions in arrest of judgment and for a new trial, a life sentence was imposed. The defendant appealed.

At about 3:30 p.m. on August 22, 1960, Eugene Pietosi, a known drug addict, was observed by certain Federal and city officers entering the home of the appellant. Five or ten minutes later Pietosi came out of the appellant's home carrying in his hand a cellophane packet containing two capsules or pills, which he dropped when the officers approached him. He was arrested and he informed the officers that the pills were supposed to contain morphine and that he had just bought them from the appellant, Peter Gomino. One of the officers testified that they had heard, from a source which had proved to be reliable in the past, that the appellant Gomino was selling morphine illegally. Pietosi was approximately 75 to 100 feet from the appellant's door when he was arrested. Some of the officers immediately entered the home of the appellant and made a search of the premises and arrested the appellant. In the search the officers found two bottles of morphine tablets, obviously purchased under prescriptions and similar to those contained in the packet which Pietosi had dropped to the ground. The officers also found spoons, hypodermic needles and other paraphernalia customarily used by addicts. The cellophane wrapper which contained the pills dropped by Pietosi was similar to the cellophane wrapper around a spoon found in the appellant's apartment. The printed matter on the two cellophane wrappers was similar.

The appellant and Pietosi were taken to police headquarters. It took about 15 to 20 minutes to go from

the appellant's home to police headquarters. At the police headquarters Pietosi, who was seated next to the appellant and not more than five or six feet from him, gave the officers a statement, which was reduced to writing and signed by Pietosi, and he stated that daily during a period of four months he had purchased from the appellant two morphine tablets, each containing one-quarter grain of morphine, for the sum of $3.00 each. The appellant made no denial thereof. A criminalist was presented by the Commonwealth, who testified that he examined the contents of the packet thrown to the ground by Pietosi and also the pills in the bottles found in the appellant's apartment and that they contained more than one-quarter grain of morphine per avoirdupois ounce. In fact, he stated that they contained approximately a thousand times more than one-quarter of a grain of morphine per avoirdupois ounce.

Officer Raugh testified that at the time of the arrest of the appellant he asked him who was prescribing the narcotics for him, for what reason and where he was having these prescriptions filled, and that the appellant answered him, giving names, addresses and dates. Raugh said that he talked to the appellant at his home for about five or six minutes.

Counsel for the appellant argues that the court erred in admitting into evidence what purported to be appellant's tacit admission of guilt when there was no evidence of corpus delicti or independent corroboration of appellant's guilt. Extra-judicial admissions or confessions of one accused of crime may not be received in evidence until the corpus delicti has first been established by independent proof, but as was said in *Com. v. Turza*, 340 Pa. 128, 134, 16 A. 2d 401, ". . . this does not mean, as appellant contends, that the Commonwealth must preliminarily and independently establish all the elements of the charge, i.e., (1) the oc-

currence of an injury or loss—in homicide, a person deceased, (2) somebody's criminality as the source of the injury or loss—in homicide that the death was caused by a beating, gunshot or other circumstances indicating a felonious act, and (3) the accused's identity as the responsible party or one of the responsible parties. 'By this view, the term "corpus delicti" would be synonymous with the whole of the charge, and the rule would require that the whole be evidence in all three elements independently of the confession, which would be absurd.' Wigmore on Evidence (3rd ed.), section 2072. The grounds on which the rule rests are the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed; consistent therewith, all that the rule requires is that the first two of the above-mentioned three elements be independently established. Thus, whenever, as here, the Commonwealth, in a homicide case, has established that the person for whose death the prosecution was instituted is in fact dead and that the death occurred under circumstances indicating that it was criminally caused *by someone,* the rule is satisfied and admissions or confessions of the accused may then always be received as proof of the identity of the guilty agent: . . . ." At page 135 the Court further said: " 'It sometimes happens the circumstances attending the act may be consistent with crime, suicide or accident. In such cases, the corpus delicti is proven where the circumstances attending the death are consistent with crime, though they may also be consistent with accident (Commonwealth v. Johnson, 162 Pa. 63), or suicide (Zell v. Com., 94 Pa. 258), and it is not necessary to show by affirmative proof that the latter two possibilities do not exist before evidence as to who did the act is admitted.' Com. v. Gardner, supra, 464 [282 Pa. 458]. See also Com. v. Coontz

288 Pa. 74, 79; Com. v. Marshall, 287 Pa. 512, 519; Com. v. Bishop, 285 Pa. 49, 53. 'There is no rule of criminal law which requires absolute certainty about this or any other question of fact. If it were otherwise, it would be impossible to convict of any offense in any case. All that the law requires is that the corpus delicti shall be proved as any other fact, that is, beyond a reasonable doubt, and that doubt is for the jury.' Gray v. Com., 101 Pa. 380, 386; Com. v. Puglise, 276 Pa. 235, 239."

In the case of *Com. v. Chuing,* 150 Pa. Superior Ct. 445, 28 A. 2d 710, a case which is quite similar to the present case, two city detectives were parked in an automobile across the street from 712 South 11th Street, Philadelphia, watching that building wherein a Chinese laundry was conducted; the defendant Eng Chuing came to the door and looked up and down the street, went back into the store, put out the electric light in front of the laundry and closed the door; about ten minutes later the other defendant Narcise walked south on the west side of 11th Street and stopped at the door of 712 South 11th Street; he knocked on the door and was admitted; in about two minutes Narcise came out of the laundry and walked toward his La-Salle automobile parked at the southeast corner of 11th and Bainbridge Streets, where he was placed under arrest by the detectives; he had in his possession two packets of smoking opium; about 11:30 the same evening the city detectives returned to the laundry and arrested Chuing; the laundry was searched but no drugs were found therein; the detectives questioned the defendant Chuing, who stated Narcise had come to the laundry the night before and asked him to get him a couple of packages of hop, the name for smoking opium; Chuing stated to the police that he procured the opium after having advised Narcise to return for it on the next night; Chuing stated to the police that he

then sold the two packets of opium to Narcise for $6.00; that Narcise gave him a $10.00 bill and got two packets and $4.00 in change; a $10.00 bill with other money was found in the possession of Chuing, who admitted that he had gotten the $10.00 bill from Narcise, and four $1.00 bills were found in the possession of Narcise at the time of his arrest. At the trial no evidence was introduced in behalf of the defendant Eng Chuing. From the above it is clear that all the evidence introduced prior to the defendant's statement to establish corpus delicti was that Narcise had entered the establishment of the defendant and emerged with the smoking opium. We held that this officially established the corpus delicti of an unlawful sale of narcotics.

In the present case, Pietosi, a known drug addict, was seen to enter the appellant's apartment and to emerge therefrom in five or ten minutes, carrying a cellophane packet in his hand. The packet was dropped to the ground by Pietosi upon the approach of the police. This was apparently an effort on the part of Pietosi to get rid of the incriminating evidence. It was similar to flight, which has often been considered as some evidence of the commission of a crime. The packet dropped by Pietosi was wrapped in cellophane similar in marking to the cellophane found in appellant's apartment. The officers, upon entering the apartment, found two bottles containing pills which were similar to those found in the packet, together with other paraphernalia used by dope addicts. The Commonwealth proved by its criminalist that the pills coming from both sources were similar and could be the same and that they contained about a thousand times more than one-quarter of a grain of morphine per avoirdupois ounce.

At the trial Pietosi also testified that he did carry the packet out of the appellant's house and that the packet had in it pills which were supposed to contain

morphine and that he was illegally in possession of these pills. In our judgment, this was ample to show that a transfer or sale of narcotics had occurred and that someone had made the sale or transfer unlawfully. We are, therefore, of the opinion that the corpus delicti had been established prior to the admission of the statement of Pietosi and the appellant's tacit admission thereto.

It is also argued that Pietosi's testimony militates against the Commonwealth's position that the corpus delicti had been established. Under cross-examination Pietosi stated that he had obtained the pills from someone other than the appellant. Pietosi, in cross-examination, stated that he had procured the pills from a colored kid named Joe Splivitz in the Hill District of Pittsburgh, but he said that the people in this business had so many names he wasn't sure that was his right name. It is a strange thing that Pietosi would carry the two pills from the Hill District to the appellant's home and then emerge from that home carrying the cellophane packet containing the pills in his hand. It seems to us that if the pills had been obtained from some other source than the appellant, Pietosi would not have been carrying them in his hand when he left appellant's premises. The jury might very well have disbelieved this unlikely story and we do not believe that it militates against the Commonwealth's position that the corpus delicti had been established.

Counsel for the appellant argues that the admission in evidence of the appellant's tacit admission constituted a violation of his constitutional rights because appellant, as a matter of law, was so under the influence of drugs that he was not competent to make a tacit admission. Complaint is also made of the failure of the court to accord appellant a preliminary hearing as to the circumstances surrounding the taking of Pietosi's statement. Appellant alleges that this prevented

him from testifying as to what he recalled of the statement. Counsel for appellant orally admitted at the argument before us that his purpose in seeking a preliminary hearing on this point was so that the appellant could testify out of the presence of the jury and thus prevent the production of his prior record by the Commonwealth. Nothing that the court did prevented the appellant from taking the stand in his own behalf for the purpose of showing his condition at the time of Pietosi's statement. He did not choose to do this and he may not now blame the court for his failure. The case of *Com. v. Ross,* 403 Pa. 358, 169 A. 2d 780, is cited by appellant in support of his assertion that the admissibility of evidence of a tacit admission is a question of law and should have been determined preliminarily out of the presence of the jury. This case really stands for the proposition that the voluntary or involuntary nature of a confession is to be determined by the jury under appropriate instructions.

In *Com. v. Vallone,* 347 Pa. 419, 424, 32 A. 2d 889, the Court said: "The only questions for the court in passing upon the admissibility of the evidence are whether the statements made in the presence and hearing of the accused were such as would naturally call for a denial and whether it was reasonably apparent to him that he had the opportunity and the liberty to speak; any reasons advanced by him to explain his failure to do so are then for the jury. 'The probative weight to be attached to evidence of this character is peculiarly a question for the jury to decide in the light of the provocative character of the statements, the character of the surrounding circumstances . . ., and any other matters explanatory of the failure of the accused to speak': 20 Am. Jur. §1197, pp. 1049, 1050. 'It is clear that no particular conduct or acquiescence can be classed as constituting a proper or improper admission, and hence it is practically impossible for a

court to charge, as a matter of law, what conduct or acquiescence constitutes, or does not constitute, an admission. It is equally clear that the jury must pass upon the question, as a matter of fact, to determine its credibility, as in all other cases of circumstantial evidence': Wharton's Criminal Evidence (11th ed.) sec. 665, p. 1107."

It appears from the testimony that the appellant had injected himself with a narcotic prior to his arrest. The officers testified that he appeared to be somewhat under the influence of a drug but that he was coherent and talked sensibly at his home. When Pietosi's statement was being taken, he told Pietosi to tell the truth. Officer Raugh testified that when the statement was being taken, the appellant was in the same condition as he was at his home. After the statement was taken, this officer testified, he talked to the appellant for five or six minutes and he answered questions and told him what doctors had given him the prescriptions and the last time he saw them. The officers subsequently checked this information and found it to be correct. We are of the opinion that the question whether or not the appellant was physically and mentally competent to deny the accusations was purely a question of fact for the jury. The court very thoroughly charged the jury on this point, requiring the jury to overcome seven hurdles in their findings in considerating this question. Among other things, the court said: "You must first believe it. Second, you must consider the statement to have been incriminating in character. Third, you must believe that it naturally called for a denial. Fourth, you must believe that the defendant did not deny it. Fifth, you must believe that the defendant was at liberty to speak and knew he had such liberty. And sixth, you must believe the defendant to be a person who would naturally respond to such accusation with a prompt denial. Seventh, you must be-

lieve under the circumstances of this case that the defendant was physically and mentally able to understand and comprehend the questions and the answers thereto under the circumstances."

Counsel for appellant also argues that the court erred in giving both proper and improper instructions to the jury as to the legal significance of Pietosi's statement. The Commonwealth, in offering the statement, stated "I will put on the record this is introduced for the purpose and sole purpose of showing admission by the defendant in that he did not deny it." The trial judge very clearly pointed out the purpose for which the statement was admitted. The statement very clearly indicated that Pietosi had purchased the morphine pills from the appellant. In cross-examination, however, by counsel for the appellant, Pietosi stated that he did not purchase the pills from the appellant but purchased them from Joe Splivitz. The court, in referring to this, said: "Now, I have suggested to you, read to you a rule of law which says if you find a person lying as to one thing you may find him lying as to all things that he says, not necessarily so. Remember my instruction on that. Here we have a statement and now he denies in effect that which he testified to or which is stated in the statement. The question of what you are going to believe and how much you are going to believe relative to his testimony is entirely up to you. Under the rules I have enunciated you may believe part, or all or none." When Pietosi changed his story as to the source of the pills the Commonwealth certainly could have used his statement as a prior inconsistent statement in order to impeach his credibility as a witness. We can see no error in the court's reference to this matter. Furthermore, at the conclusion of the court's charge, the court asked for corrections and counsel for appellant indicated that he was satisfied with the charge.

Complaint is also made as to the admission by the court of that portion of Pietosi's statement which referred to prior sales. It is clear that evidence of other crimes is admissible when it tends to prove a common scheme, plan or design or to establish the identity of persons charged with the commission of a crime: *Com. v. Burdell,* 380 Pa. 43, 110 A. 2d 193.

Complaint is also made as to the testimony of Pietosi admitting his plea of guilty to the illegal possession of drugs arising out of the events which occurred on August 22, 1960. It was incumbent upon the Commonwealth to prove that there had been an unlawful sale or transfer of drugs in order to prove the corpus delicti. The admission of Pietosi that he was illegally in possession of drugs was a necessary link in the chain and we can see no error in the admission of this evidence. Furthermore, the circumstances surrounding Pietosi's possession of the pills was some evidence which the jury could consider in determining whether he had gotten possession of the drugs from the appellant.

The redirect examination of Pietosi by the Commonwealth without a plea of surprise was clearly within the discretion of the court. While as a general rule a party who calls a witness represents him as being worthy of belief and cannot impeach him, this rule has been considerably relaxed to prevent injustice and the tendency of the courts is to permit parties to show the truth without strict regard to technicalities: *Com. v. Deitrick,* 221 Pa. 7, 70 A. 275; *Com. v. Reeves,* 267 Pa. 361, 110 A. 158; *Com. v. Spardute,* 278 Pa. 37, 122 A. 161; *Com. v. O'Donnell,* 81 Pa. Superior Ct. 89; *Com. v. Viscosky,* 83 Pa. Superior Ct. 96.

Counsel for the appellant also contends that the admission of the evidence found in appellant's home at the time of his arrest was in error because of the

absence of a search warrant. A police officer may arrest without a warrant where there is probable cause and reasonable ground to believe that the person arrested has committed a felony: *Com. v. Bosurgi*, 198 Pa. Superior Ct. 47, 50, 182 A. 2d 295.

When a lawful arrest has been made a reasonable search of the premises under defendant's control is also lawful without a search warrant as being incident to the lawful arrest: *Com. v. Richards*, 198 Pa. Superior Ct. 39, 45, 182 A. 2d 291..

In the present case the officers had received information from a source that theretofore had proved to be reliable to the effect that the appellant was illegally engaged in the sale of narcotics. While having the house under observation a known drug addict entered the appellant's house; in five or ten minutes he came out of the house holding a cellophane packet in his hand. When the officers approached him he endeavored to dispose of the evidence by throwing the packet to the ground. He admitted to the officers that he had just purchased the narcotics from the appellant and he also admitted that he had illegal possession thereof. The officers immediately entered the house without procuring a warrant and found two bottles of morphine tablets or pills, together with other paraphernalia customarily used by drug addicts in administering the drug. Appellant was arrested while the search was being made. The officers testified that they did not get a warrant because narcotics are easy to get rid of and that if they had taken time to get the warrant, they would probably have lost the evidence. They said it was broad daylight when they arrested Eugene Pietosi outside of the appellant's home, that there were many people on the street, that they placed handcuffs on Pietosi and they feared that someone would warn the appellant if they took several hours to go and get a warrant for the search and

seizure. Under all the circumstances, we are of the opinion that this was a lawful arrest without a warrant and a lawful search and seizure without a warrant.

Complaint was also made by counsel for the appellant as to several prejudicial remarks made by the assistant district attorney in his closing argument to the jury. Counsel for the appellant made various objections during the argument but there was no request at the time that the objectionable references be placed on the record or that a juror be withdrawn. An objection and motion for the withdrawal of a juror made at the close of opposing counsel's speech is untimely: *Com. v. Wilcox*, 316 Pa. 129, 138, 139, 173 A. 653. The court charged the jury quite fully in regard to these points and we are convinced that no error occurred in connection with the same.

The appellant was sentenced on March 9, 1962 to pay a fine of $100.00, the costs of prosecution, and undergo imprisonment for the period of his natural life. Sentence was imposed under the Act of July 11, 1917, P.L. 758, 35 PS §851, as finally amended by the Act of July 19, 1957, P.L. 1013, which provides as follows: "(a1) Any person who sells, dispenses or gives away any drugs in violation of the provisions of this act shall be guilty of a felony, and, upon conviction thereof, shall be sentenced as follows: . . . and for a third or subsequent offense, or *if the offender shall previously have been convicted two or more times in the aggregate of any violation of the law of the United States or of any other state, territory or district relating to drugs, and said violation would have been a violation of the provisions of this section had it occurred in this Commonwealth,* to pay a fine not exceeding fifteen thousand dollars ($15,000) and to undergo an imprisonment by separate or solitary confinement at labor for the term of his natural life." (Emphasis

added) This act was expressly repealed by §31 of the Act of 1961, P.L. 1664, 35 PS §780-31. Section 29 of the 1961 act, however, provided: "Savings Provision.— The provisions of this act shall not affect any act done, liability incurred or right accrued or vested, or affect any suit or prosecution pending to enforce any right or penalty or punish any offense under the authority of any act of Assembly, or part thereof, repealed by this act." 35 PS §780-29.

The prior record of the appellant, introduced by the Commonwealth, showed that the appellant's prior convictions were for infractions of the Federal law and that they occurred in the Southern District of New York but the record did not reveal the quantity or quality of narcotic drugs involved in the prior convictions. The Pennsylvania Act, unlike the Federal statutes, creates a specific exemption for certain "drugs" as follows: "The word 'drug' shall not be constructed to include—(1) preparations and remedies and compounds which do not contain more than two grains of opium, or more than one-fourth of a grain of morphine, or more than one-eigth of a grain of heroin, or more than one grain of codeine, or any salt or derivative of any of them, in one fluid ounce, if the same is liquid; or, if a solid or semi-solid, in one avoirdupois ounce. . . ." 35 PS §852.

We are convinced that the Commonwealth did not meet the burden of proving that the prior offenses would have constituted violations of the provisions of our law had they occurred in this Commonwealth. The assistant district attorney argues that this will place a great burden upon the Commonwealth. We do not think that the burden is too great when we consider that a life sentence is involved. We will, therefore, remand the record to the court below for the purpose of holding an additional hearing or hearings to give the Commonwealth an opportunity to prove, if it can,

that the prior violations were such that if they had occurred in Pennsylvania they would have been violations of our law as it then was. The court will then impose such sentence as is warranted under the proofs.

The judgment of sentence is vacated and the record is remanded to the court below for the above-mentioned purpose.

WATKINS and MONTGOMERY, JJ., would grant a new trial.