Commonwealth *v.* Smith, Appellant.

Argued November 16, 1966. Before BELL, C.J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

Edward F. Kane, with him Bean, DeAngelis, Tred-innick & Giangiulio, for appellant.

Richard A. Devlin, Assistant District Attorney, with him Richard S. Lowe, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE JONES, March 14, 1967:

In June 1964, Edward J. Smith, after a jury trial in the Court of Oyer and Terminer and General Jail Delivery of Montgomery County, was found guilty of robbery with offensive weapon, burglary, conspiracy to commit burglary and wantonly pointing a firearm. Smith's motions for a new trial and in arrest of judgment were dismissed and he was sentenced to serve a minimum sentence of 2½ years, and a maximum sentence of 15 years. In July 1965, the Superior Court, by a per curiam order, affirmed the judgment of sentence.

On December 20, 1965, we vacated the order of the Superior Court and remanded the record to the trial court with the direction to hold a hearing to determine whether petitioner had been deprived of the assistance of counsel in the prosecution of his appeal to the Superior Court. The trial court then appointed counsel for Smith and another appeal was taken to the Su-

perior Court, which, in a per curiam opinion, filed April 26, 1966, affirmed the judgment of sentence. We permitted allocatur.

Three issues are raised upon this appeal: (1) did the trial court err in refusing to permit Smith to testify to a conversation with a witness, one Gittlemacker, in which, allegedly, the identity of Gittlemacker's accomplice in the robbery and burglary had been revealed to Smith; (2) did the trial court err in instructing the jury that Smith had admitted entering into a conspiracy to commit the burglary; (3) was the Commonwealth's evidence sufficient to sustain Smith's conviction?

Smith contends that the trial court erred in refusing to permit him to testify as to an alleged conversation he had had with his alleged co-conspirator, Jack Gittlemacker. At Smith's trial, Gittlemacker was called to the stand. Gittlemacker, who had already been convicted by a jury for participating in the same robbery of which Smith was charged on January 5, 1963, testified, after declaring his own innocence on direct examination, that Smith did not accompany him to the victim's home on January 5, 1963.

At this trial, Smith's counsel asked the following questions and Gittlemacker made the following responses: "Q. Was Edward Smith with you when the burglary was committed? A. As far as I know, nobody was with me, and I wasn't with myself. I pleaded not guilty. Q. Did you inform me [McAllister] approximately two hours ago while sitting on this bench that Edward Smith was not with you? A. I said that, yes. Q. Did you further inform me that you would tell his Honor and tell this Jury the name of that person who was with you in the event you got some cooperation by way of a reduction of your sentence? A. Will you repeat that again? [the question was repeated] I don't want to answer that."

After a brief exchange with the court and opposing counsel, counsel for defendant then stated: "I am going to ask his Honor at this time to declare him [Gittlemacker] a hostile witness so he can be examined by me." The court made no direct reply to this but McAllister was permitted to continue questioning Gittlemacker on the subject of who was Gittlemacker's accomplice on January 5, 1963. Gittlemacker remained adamant that he was not present at the victim's house and that defendant was not with him on the day in question.[1] At that trial, when the Commonwealth cross-examined Smith concerning prior convictions, the trial court granted Smith's request for the declaration of a mistrial.

At the second trial, approximately five months later, Gittlemacker gave approximately the same testimony when called on behalf of Smith and stated that Smith was not with him on January 5, 1963. Upon cross-examination, Gittlemacker claimed that he was not at the victim's house on that date. When Smith took the stand at the second trial, after again denying on direct examination that he had taken part in the robbery, Smith testified that Gittlemacker had told him in a conversation the name of Gittlemacker's accomplice in the robbery on January 5, 1963. Upon objection by the Commonwealth, Smith was not permitted by the trial court to name the alleged accomplice or to recount any of the conversation with Gittlemacker concerning the alleged accomplice. The reason assigned for excluding such testimony was that Smith was attempting to impeach his own witness Gittlemacker.

---

[1] Both Gittlemacker and Smith did admit going to the victim's house on December 29, 1962, in order to investigate the possibility of robbing it. However, Smith testified that after the 29th he refused to go through with any robbery plans.

We are of the opinion that the court erred in the exclusion of this testimony. Such testimony was admissible not to prove the truth of such statement but to establish the fact that such a conversation had taken place between Gittlemacker and Smith. While it would have contradicted Gittlemacker who had been called as a defense witness, the law permits such type of contradiction. "While as a general rule a party who calls a witness represents him as being worthy of belief and cannot impeach him, *this rule has been considerably relaxed to prevent injustice and the tendency of the courts is to permit parties to show the truth without strict regard to technicalities*: Com. v. Deitrick, 221 Pa. 7, 70 A. 275; Com. v. Reeves, 267 Pa. 361, 110 A. 158; Com. v. Spardute, 278 Pa. 37, 122 A. 161; Com. v. O'Donnell, 81 Pa. Superior Ct. 89; Com. v. Viscosky, 83 Pa. Superior Ct. 96." *Commonwealth v. Gomino,* 200 Pa. Superior Ct. 160, 173, 188 A. 2d 784 (1963). (Emphasis added).

By reason of the exclusion of such testimony Smith was prevented from fully developing his alibi of non-participation in the robbery. He could not plead surprise as to Gittlemacker's testimony that he took no part in the robbery because the same testimony had been given in the abortive first trial. Had Smith been able to declare that he was surprised and to consider Gittlemacker a hostile witness, as he had done at the first trial, then the foundation would have been laid for Smith to recount his conversation which contradicted Gittlemacker's testimony by implicating another person as the guilty party.

At the second trial, it was the Commonwealth which brought out, upon cross-examination, the version of Gittlemacker's story which Smith wanted to contradict. In *Commonwealth v. Staino,* 204 Pa. Superior Ct. 319, 327, 204 A. 2d 664 (1964), the Superior Court set forth the test for determination of *permissible* con-

tradiction of one's witness as opposed to *non-permissible* impeachment of one's witness. The distinction is whether one is directly trying to discredit the credibility of one's own witness (impeachment) or whether one is trying to make more accurate the testimony supplied by one's own witness (contradiction). In the case at par, since Smith was not directly attacking Gittlemacker's credibility, since the exclusion of the alleged conversation was crucial to the efficacy of Smith's defense, and since our courts have recently relaxed the impeachment rule where the interest of justice requires, we believe that the court below erred in excluding this testimony.

In the trial court's instruction to the jury, the court stated that Smith *admitted* entering into a conspiracy to commit the burglary on December 29, 1962. A review of the record indicates that Smith did admit that he had gone to the victim's home on December 29, 1962, with Gittlemacker to determine the feasibility of staging a robbery of such home but he testified that he decided that, since two people—the victim and a service station employee—had seen him "case the house", it would be foolhardy to make any such plans and that he had refused to rob the home at a later date. The record does not reveal an *admission* by Smith of such facts as would have established a conspiracy to rob the victim's home. Upon such state of the record the instruction given to the jury that Smith *admitted* entering into a conspiracy was erroneous.

Lastly, we have reviewed at length this record and we are convinced that there was sufficient evidence produced by the Commonwealth to sustain a conviction of the crimes whereof Smith stood charged. Were it not for the trial errors committed Smith's conviction would not be set aside.

Judgment of sentence reversed and new trial granted.

Mr. Justice ROBERTS concurs in the result, believing the charge of the Lower Court was erroneous.

CONCURRING OPINION BY MR. JUSTICE MUSMANNO:

I quote from the Opinion of the lower Court in this case: "After the jury returned and entered its guilty verdict, the defendant protested his innocence so vehemently that the trial judge suggested that the defendant be given a polygraph examination. The results of the tests did not reflect any evasion of the truth when he said he had not participated in the burglary and robbery. The district attorney, at time of sentence, reported that his staff had checked out all leads as to whom the other party could have been. All such leads returned them once again to the conclusion that, notwithstanding the polygraph test, defendant was guilty of committing the burglary with Jack Gittlemacker."

This is one more instance of the many that have come into the courts demonstrating the unreliability of the so-called lie-detecting machine. If its results may not be employed to argue for the innocence of the defendant, the machine should never be used to argue for the guilt of the defendant. In short, the polygraph test is a fanciful notion and should be treated as such.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

The majority relies on a technicality which amounts to a distinction without a difference, and then bases its conclusion on a Procrustean stretch.

I would affirm, as did the Superior Court, the judgment of sentence.