## Commonwealth *v.* DiPasquale, Appellant.

Argued November 29, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*G. Fred DiBona* and *John A. Geisz,* for appellant.

*Joseph M. Smith,* Assistant District Attorney, with him *Benjamin H. Levintow* and *Alan J. Davis,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 21, 1967:

In March 1964, Ludwig Branach was robbed and brutally assaulted in his grocery store in the city of

Philadelphia. He died from the injuries received. John Amato and James DiPasquale were arrested in connection with the crime. On May 12, 1965, DiPasquale was convicted by a jury of: (1) murder in the first degree with punishment fixed at life imprisonment; (2) conspiracy to commit robbery; and, (3) robbery.

After a new trial was denied and sentences imposed, an appeal from the judgment resulting from the murder conviction was filed in this Court. Appeals from the judgments in the conspiracy and robbery convictions were filed in the Superior Court and later certified here.

Billie Pierce, a girl friend of DiPasquale, was interrogated by the police during the investigation of the crime and gave them a recorded statement, wherein she stated, inter alia, that a few days following the occurrence DiPasquale had admitted in her presence that he and Amato had committed the crime involved. Later Miss Pierce was a witness at the hearing before the committing magistrate and testified under oath to substantially the same facts she related to the police. Later she was interviewed by a Mr. Sklar, an assistant district attorney who was preparing the case for trial, and reaffirmed the truth of her statement to the police. Her name was also listed as a witness on the bills of indictment. However, sometime before trial, Miss Pierce notified the district attorney through her attorney, that her statement to the police and her testimony before the committing magistrate concerning DiPasquale's alleged incriminating admissions were not true. As a result she was not called as a witness at trial by the Commonwealth.

After the evidence was closed at trial and both sides had rested, the district attorney then requested that Miss Pierce be called as the court's own witness. The court complied with this request. She was examined about her association with DiPasquale, and in particu-

lar about anything she heard him say concerning the crime involved. When she failed to disclose and denied that DiPasquale had ever made any incriminating admissions as to the crime in her presence, she was strenuously cross-examined by the Commonwealth as to the contents of her statement to the police, her testimony before the magistrate and her interview with Mr. Sklar. What she said on these occasions was disclosed to the jury and the patent inconsistencies thereof with her trial testimony was forcefully brought out. While she freely admitted telling the police, the magistrate and Mr. Sklar that she had heard DiPasquale make the incriminating statements involved, she steadfastly denied at trial she had ever heard DiPasquale make such statements, and stated her previous statements and testimony before the magistrate to the contrary were false.

Whether or not Miss Pierce told the truth in her trial testimony, it is established beyond argument that evidence of her prior inconsistent statements and testimony, if admissible at all, was limited to the purpose of impeaching *her credibility*. It was not competent as substantive evidence of the guilt of the accused or to establish the truth of the facts therein contained. See 3 Wigmore, Evidence §1018 (3d ed. 1940) ; *Harrah v. Montour Railroad Co.,* 321 Pa. 526, 184 A. 666 (1936) ; *Gougher v. Hansler,* 388 Pa. 160, 130 A. 2d 150 (1957). However, the trial judge did not explain this significant fact to the jury or discuss the testimony in any manner in the course of his charge. Ordinarily, the failure to give such an instruction is not reversible error in the absence of a request therefor, which was not made in the instant case. See *Commonwealth v. Schroeder,* 302 Pa. 1, 152 A. 835 (1930), and *Bizich v. Sears, Roebuck & Company,* 391 Pa. 640, 139 A. 2d 663 (1958). But in view of the nature of the testimony involved, the unusual posture in which it

was presented, and the impact it undoubtedly had on the jury, we conclude that DiPasquale was unduly prejudiced by the trial court's failure to explain the limited purpose of the particular testimony to the jury.

Moreover, another facet in connection with Miss Pierce's testimony needs to be discussed. As a general rule a trial judge may in the exercise of a sound discretion call and examine witnesses of his own accord. See Annot., 67 A.L.R. 2d 538, 540 (1959); 58 Am. Jur., Witnesses §4 (1948); 2 Wharton's Criminal Evidence §704 (12th ed. Anderson 1955); 42 Harv. L. Rev. 445 (1929). In fact under certain circumstances, it is necessary and imperative for the court to do so. See *Commonwealth v. Burns,* 409 Pa. 619, 187 A. 2d 552 (1963). As stated in 9 Wigmore, Evidence §2484 (3d ed. 1940), "The general judicial power itself, expressly alloted in every State constitution, implies inherently a power to investigate as auxiliary to the power to decide; and the power to investigate implies necessarily a power to summon and to question witnesses:" See also *Commonwealth v. Bready,* 189 Pa. Superior Ct. 427, 150 A. 2d 156 (1959), and *Ex Parte Peterson,* 253 U.S. 300 (1920).

However, in exercising this power, a wise discretion should be utilized, not only as to whether witnesses should be called by the court itself, but also as to the extent and manner of the examination permitted. While the trial court here may have been fully justified in calling Miss Pierce as its own witness, we believe that it failed to exercise a sound discretion in the extent and nature of the examination permitted.

Evidence of Miss Pierce's prior inconsistent statements was pure hearsay. If she had been called as a Commonwealth's witness, evidence thereof could not properly have been introduced under the circumstances presented. However, since she was not such a witness, the Commonwealth, under the guise of impeaching her

credibility, was permitted to bring to the knowledge of the jury through the back door that which it was precluded from bringing in through the front door; namely, the damaging contents of her prior inconsistent statements*  The rule permitting trial courts to summon and examine witnesses on its own accord does not envision that the power shall be exercised to accomplish such a result.

In view of what has been said hereinbefore, the remaining assignments of error need not be discussed.

Judgments reversed and new trial ordered.

Mr. Chief Justice BELL dissents.

---

* Such procedure was severely condemned by this Court, speaking by Chief Justice JONES, in *Commonwealth v. Turner*, 389 Pa. 239, 248-253, 133 A. 2d 187 (1957).