Goodis, Appellant, *v.* Gimbel Brothers.

Argued January 4, 1966. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Stanley M. Poplow,* with him *Bellis, Kolsby & Poplow,* and *Fineman & Fineman,* for appellants.

*Albert C. Gekoski,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 22, 1966:

Mrs. Sylvia Goodis sued Gimbel Brothers in trespass averring that, as a result of their negligence in maintaining a certain room in their store, she was injured. The jury returned a verdict for the defendant and the plaintiff seeks a new trial.

At the trial Mrs. Goodis testified that when she rose from a desk at which she had been working in the women's clubroom in Gimbel's, her foot entangled in an open seam in the carpet underfoot and she was thrown to the floor. She said that the rent in the carpet measured 1½ inches in width and 2½ inches in length. The only other person in the room at the time of the accident was a Mrs. Anne Rovner, who, called by the defendant as a witness, testified that she was not watching the plaintiff at the time of her fall and; therefore, knew nothing about the cause of her mishap.

Defendant's counsel here pleaded surprise and sought to introduce in evidence a prior written inconsistent statement made by Mrs. Rovner. Since Mrs. Rovner, in her direct testimony, had said nothing which

supported the plaintiff or damaged the defendant, defendant's counsel then explained: "I showed her the statement of July 28, which she signed, and asked her to read it. After she read it, I asked her if it was the truth at the time she signed it and she said she told the truth. I then asked her if she would repeat the information contained in this statement, and she said, 'Well, I can't remember everything; I was trying to give general statements.'"

This comment effectually lifted the arrow of "surprise" out of the defendant's counsel's quiver of attack. Since he now knew that Mrs. Rovner would not testify to the specifics of the accident and he thus could not have been astonished by what she said from the witness stand, he endeavored to disclose the contents of Mrs. Rovner's statement for the purpose of impeaching her credibility. The court indicated it would permit this, whereupon plaintiff's counsel observed: "I ask that the jury be instructed, either at the present time or in the charge, that this reading is not for the purpose of establishing the truth of what is said in this statement, but merely for the purpose of impeaching whatever it was that the witness testified to prior to this time."

The court agreed with this proposition, but added that the statement would "not necessarily . . . be considered as substantive testimony as to the manner, in which the accident occurred." When the court used the phrase "not necessarily," it opened a door as wide as the breadth of the jury box for the jury to do what the court already had regarded, generally, as improper.

According to the written statement given by Mrs. Rovner to a representative of the defendant, Mrs. Goodis had fallen when she walked off the platform on which both women had been working. The intent of such a declaration, of course, would be to refute Mrs. Goodis' testimony that she had fallen because of

442

a defective carpet. But the statement could not be used as a direct refutation to the facts of the accident. The court knew this but did not specifically instruct the jury to this effect. Instead, it used the phrase "not necessarily." This phrase did not construct a high enough fence around the statement to prevent its being accepted as a direct account of an eyewitness as to what had occurred. However, whatever barrier the judge may have felt he had built around the statement as substantive testimony, he completely dismantled when he added: "It is . . . for the jury to determine."

Leaving the matter up to the jury was a direct invitation to the jury to weigh and deliberate on everything that was read to them from Mrs. Rovner's written statement. The court here erred on all counts. Our former colleague Justice ARNOLD, when he was on the Superior Court, said in a situation similar to this one: "Since the purpose of the cross-examination and impeachment is, then, to induce the jury to *disbelieve* the testimony of the witness,—there must be something in the witness' testimony, which, if not disbelieved by the jury will be hurtful or injurious to the party calling him. Were it otherwise there could be no occasion to discredit or impeach the witness or to stamp him as unworthy of belief. On the contrary it would be utterly immaterial whether the jury believed him or not." (*Selden v. Metropolitan Life Insurance Company,* 157 Pa. Superior Ct. 500, 508).

Even though in his charge the judge made a mild attempt to restrict the jury's consideration of the statement to Mrs. Rovner's credibility as a witness, the harm had already been done and psychologically it would have been impossible to erase from the juror's minds the picture drawn from Mrs. Rovner's statement, namely, that Mrs. Goodis fell from the platform because she had thought it was longer than it actually was. This conclusion would, of course, wipe out the

plaintiff's claim that she tripped over a defect in the carpet.

In *Fisher v. Hart,* 149 Pa. 232, the plaintiff asked the involved witness two questions to which he replied "I don't remember." This Court said that with this foundation cross-examination was not in order: "The witness had not testified to anything prejudicial to the plaintiff, nor does it appear that he had manifested any bias . . . The result of this [propounding leading questions by way of cross-examination] was to put in the mouth of the witness the very allegations of the fact which the plaintiff wished him to verify by an affirmative answer." This ruling, as well as the one in the *Selden* case, was cited with approval by former Chief Justice Jones in his opinion in the case of *Commonwealth v. Turner,* 389 Pa. 239, 256-57.

Defendant's counsel argues that he was entitled, in fact compelled, to use Mrs. Rovner's statement because in his opening speech he had promised the jury that he would produce the only eyewitness, Mrs. Rovner, who would corroborate the version given by defendant's witnesses as to the condition of the carpet. Counsel argues further to us that if he did not present Mrs. Rovner's statement this would leave the jury "with the thought that defense counsel had overstated what this witness knew of the accident."

But the rules of evidence cannot be suspended because of what counsel tells the jury. Defendant's counsel either did not know what Mrs. Rovner would testify to, and he, therefore was skating on thin ice in telling the jury what she would say, or, on the other hand, he did know what Mrs. Rovner would say, in which case he skated with open eyes into open water.

Counsel argues further: "What trial counsel says to a jury is often important to them, is frequently the point of decisive argument, when the proof fails to or does measure up to what was said in the opening address."

But counsel was under no compulsion to tell the jury that Mrs. Rovner would support his case. In fact, according to what he told the court later he knew that Mrs. Rovner would not refute Mrs. Goodis' testimony. If lawyers were permitted to break the rules of evidence only because otherwise they would seem inconsistent in the eyes of the jury, the rules would be of no binding force whatsoever. All that counsel would need to do, in order to haul in bales of hearsay, irrelevant and incompetent evidence would be to tell the jury that he intended to do that very thing.

Since the case must go back for retrial, we will advert to another matter on which the trial judge ruled incorrectly. Defendant's counsel called a Michael Heaney who testified to conversations he had had with Mrs. Goodis and Mrs. Rovner. Plaintiff's counsel sought by cross-examination to establish that Heaney was an insurance adjuster and, therefore, to that extent was a partisan witness. The court refused to permit this cross-examination.

Fortresses have been built around insurance carriers in personal injury cases to protect them from the oral bombardment by plaintiff attorneys that the defendants involved will not be subjected to financial hardship in the event of plaintiffs' verdicts since the defendants are insured.

If an insurance adjuster comes out of this fortress of protection and proceeds to engage in open battle with the plaintiff, he cannot expect to be regarded as a disinterested person seeking abstract justice, wholly unconcerned with the nature of the verdict. In attempting to discredit the plaintiff in this case by testifying to his conversation with her, contradicting what she had said, Heaney definitely put himself on the side of the defendant and the jury was entitled to know that he had a direct interest in keeping in the treasury of the insurance company the money which Mrs. Goodis

was trying to extract therefrom. Since, therefore, he became an interested witness the court should not have clothed him in the armor of nonidentification. He voluntarily entered into an adversary proceeding and consequently the plaintiff had the right to demand that he lift his visor so that the jury could see who he was, what he represented, and what interest, if any, he had in the results of the trial, so that the jury could appraise his credibility.

Judgment reversed with a venire facias de novo.

Mr. Chief Justice BELL dissents.

---

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I concur on the ground that the court below improperly permitted defendant to impeach its own witness through the introduction of a prior inconsistent statement. In light of the fact that the witness' testimony at trial contained nothing harmful or prejudicial to defendant, there was no occasion for permitting the attempted impeachment. See *Commonwealth v. Turner,* 389 Pa. 239, 256-58, 133 A. 2d 187, 195-6 (1957); *Fisher v. Hart,* 149 Pa. 232, 235, 24 Atl. 225 (1892); *Selden v. Metropolitan Life Ins. Co.,* 157 Pa. Superior Ct. 500, 507-08, 43 A. 2d 571, 576-77 (1945). I further believe that the trial court erred in its failure to instruct the jury *with clarity* that the prior inconsistent statement of the witness, once admitted, could be considered by the jury only for the purpose of evaluating the witness' credibility and not as substantive evidence.

I disagree, however, with the advisory ruling of the majority regarding the cross-examination of defendant's witness Michael Heaney. While I believe the majority unnecessarily anticipates this issue, since they have expressed their views, I find it appropriate to make clear my disagreement.

In my view, plaintiff was entitled on cross-examination to establish that Heaney was employed on behalf of the defense. I believe it unnecessary, however, for the fact that his employment was as an insurance adjuster to be made known to the jury. By permitting plaintiff, through cross-examination, to apprise the jury of Heaney's employment, the jury would be able to take that fact into consideration in passing upon his credibility. At the same time, since the specific nature of that employment need not be revealed, defendant would not be unduly prejudiced by having the fact of insurance called to the jury's attention.

Mr. Justice JONES joins in this opinion.