Barbara Ann BROWN, a minor, by her parent and natural guardian, Rosalie Brown, and Rosalie Brown

v.

Robert P. EDWARDS.

Civ. A. No. 32258.

United States District Court

E. D. Pennsylvania.

Sept. 30, 1966.

Sidney L. Weinstein, Philadelphia, Pa., for plaintiffs.

Albert C. Gekoski, Philadelphia, Pa., for defendant.

OPINION AND ORDER

JOHN W. LORD, Jr., District Judge.

This action for damages arose from an automobile accident on the Pennsylvania Turnpike in August of 1961. The plaintiffs were passengers in a car operated

by a Wallace Pendergrass, traveling in a westerly direction on the Pennsylvania Turnpike. The defendant Edwards' vehicle was headed in the same direction in the adjacent lane. There was testimony that the Pendergrass vehicle, without warning and in violation of clearly posted highway regulations, attempted to execute a U turn, and that in doing so pulled into the path of the Edwards car. The plaintiffs sought to prove that the defendant contributed to the accident by operating his car too fast for conditions, and, in general, by striking the Pendergrass vehicle in the rear.

The operator of the car in which the plaintiffs were passengers, Mr. Pendergrass, did not appear in court to testify, and, consequently, the only testimony about the manner in which the Pendergrass car was operated came from his passengers, the plaintiffs.

The case went to the jury, and a verdict was rendered in favor of the defendant. The matter is now before the Court on the Plaintiffs' Motion for a New Trial.

It is agreed by all parties that the only issue now before the Court is the propriety of its ruling regarding the testimony of a Eugene Boyle, an employee of an independent investigating agency which had been retained to investigate the matter by the defendant's insurance company.

About two weeks after the accident, Mr. Boyle visited the plaintiff, Rosalie Brown, at her home and secured a statement from her. The statement was in narrative form, written in the first person singular by Mr. Boyle. It consisted of two pages, and, among other things, recited the plaintiff's recollections as to the various positions of the two cars shortly before the collision and immediately thereafter. It also contained various data concerning the plaintiffs' alleged injuries.

Prior to formally introducing the statement into evidence, counsel for the defense used certain portions of the statement in his cross-examination of the plaintiff, Rosalie Brown. Specifically, he questioned her about her recollection concerning the positions of the two cars shortly before the accident. Initially, in her examination this plaintiff admitted that the statement contained her signature, and that the statement was correct and true. However, during a deposition in 1963 she had testified that she had observed the defendant's car shortly before the accident, whereas in the written statement she indicated that she had not seen the striking vehicle. This testimony was very important to the plaintiffs, since it was the only testimony on their behalf regarding the operation of either vehicle. Nevertheless, even after it became apparent that the defense intended to impeach the testimony of the plaintiff, counsel for the plaintiff stipulated to the introduction of the statement into evidence without the necessity of formal proof (N.T. 90–91), thus relinquishing his best opportunity to cross-examine Mr. Boyle regarding his employment and the circumstances under which the statement was taken.

Later in the trial, counsel for the plaintiffs sought to call Mr. Boyle as his rebuttal witness ostensibly to show the nature of his employment and the various techniques used in taking such statements. Although it was not entirely clear what the plaintiffs thereby intended to rebut, the court nevertheless, in the exercise of its discretion, allowed the plaintiffs to call Mr. Boyle as plaintiffs' witness. On direct examination by plaintiffs' counsel, Boyle was searchingly questioned regarding his employment. It was brought out that he was a trained investigator, that he had taken such statements on behalf of defendant for some thirteen years, and that he specialized in the investigation of automobile accidents (N.T. 446–458). However, the plaintiffs' counsel was told by the Court that he would not be permitted to bring out the fact that Mr. Boyle had taken the statement on behalf of an insurance company.

After the plaintiffs had finished the direct examination of Mr. Boyle, the de-

fendant called him to the stand as his own witness for the purpose of proving service of a subpoena on Mr. Pendergrass, the driver of the car in which the plaintiffs were riding. At this time counsel for the plaintiffs renewed his request to ask Mr. Boyle whether he was employed by an insurance company and the Court again refused to allow it.

These rulings are now urged by the plaintiffs as a ground for a new trial.

## DISCUSSION

In support of the motion for a new trial, counsel urges most strenuously that the recent Pennsylvania case of Goodis v. Gimbel Bros., 420 Pa. 439, 218 A.2d 574 (1966) is controlling.

In that case the plaintiff sued for injuries she sustained when she allegedly caught her shoe in an open seam in the carpet of the defendant's store. However, the investigation by the defendant's insurance carrier disclosed a witness, a Mrs. Rovner, who initially gave a statement to the defendant's insurance investigator that the plaintiff's injury occurred when she walked off the platform on which both women had been working. The clear purpose of the statement was to impeach the credibility of the plaintiff.

However, when the witness, Rovner, was called to testify, she stated that "she was not watching the plaintiff at the time of her fall and, therefore, knew nothing about the cause of her mishap" (at p. 440, 218 A.2d at p. 575). The defendant used this opportunity to plead surprise and to introduce the statement which was received in evidence.

On appeal the trial court was reversed for essentially two reasons. First, in charging the jury the trial court, over the objection of counsel for the plaintiff, stated that the statement would "not necessarily * * * be considered as substantive testimony as to the manner in which the accident occurred." This was clearly error under the law of Pennsylvania. Moreover, although it is not entirely clear from the opinion, it appears further that at some time prior to

calling Mrs. Rovner to the stand the defendant was advised that she would testify that she was not looking at the plaintiff when the accident occurred. Of course, this would remove the element of surprise which would be necessary in order to impeach one's own witness.

On remanding the case to the trial court, however, the majority referred to another matter. It appears that the defense had called as its witness an insurance adjuster, a Mr. Heaney, who testified on direct examination regarding the contradictory statements of the witness, Rovner. On cross-examination, the plaintiff sought to bring out the fact that Heaney was employed by an insurance company, and the trial court disallowed it. As to this aspect of the trial, the Supreme Court observed (420 Pa. at p. 444, 218 A.2d at p. 577):

> "If an insurance adjuster comes out of this fortress of protection and proceeds to engage in open battle with the plaintiff, he cannot expect to be regarded as a disinterested person seeking abstract justice, wholly unconcerned with the nature of the verdict."

The majority went on to state, in the nature of an advisory opinion, that the plaintiff should have been permitted to disclose Heaney's insurance connection.

However, it is unnecessary to rely solely on *Goodis* for the proposition that once an insurance adjuster takes the stand to impeach the credibility of the plaintiff, his background is subject to disclosure. This Court's examination of the relevant Pennsylvania authorities indicates that this has been the rule in Pennsylvania for some fifty or more years, although, perhaps, more honored in the breach than in the observance.

In Lenahan v. Pittston Coal Min. Co., 221 Pa. 626, 70 A. 884 (1908), the Pennsylvania Supreme Court was confronted with a case where the defendant in the action called his own attorney for the purpose of discrediting a witness for the plaintiff. It appears that the attorney had attended an inquest at which the witness for the plaintiff had previously

testified in a manner inconsistent with his testimony during the trial of the action. The defendant then called the attorney to impeach the witness' credibility by eliciting from the attorney testimony concerning the witness' prior inconsistent statements. It appears further that the defendant attorney also represented a surety company that had insured the defendant against loss from accidents to its employees. The attorney in his examination in chief disclosed his representation of the defendant, but said nothing with respect to the fact that he was also associated with the surety for the defendant. On cross-examination, however, he was asked whether he also represented, as an attorney, the surety, and the question was permitted. On appeal, the trial court's ruling was affirmed.

The *Lenahan* case is most frequently cited for the proposition that it is error to inject insurance into the trial where its existence has no relevancy to the matter at issue. This is certainly proper, since the court there stated that it would tolerate no evasion of its prohibition against the gratuitous injection of insurance in a case. However, it also clearly states that when the defendant places an insurance connected witness on the stand he takes his chances that the trial court will determine that his association with an insurance company will be relevant to the question of his credibility. After stating the general rules against the admissibility of insurance, the court went on to say:

> "But, in applying them, regard must be had to the undoubted right of the plaintiff to cross-examine a witness for the defendant to show his interest or bias. It is always the right of a party against whom a witness is called to show by cross-examination that he has an interest direct or collateral in the result of the trial, or that he has a relation to the party from which bias would naturally arise. Such an examination goes to the credibility of the witness. (citations omitted). The right is not to be denied or abridged because incidentally facts may be de-

veloped that are irrelevant to the issue and prejudicial to the other party. This chance the party takes when he calls the witness.

> "The defendant's witness in his examination in chief testified that he was attorney for it. This was but a partial disclosure of facts that might create a bias, and it was competent for the plaintiff to show the full extent of the witness's relation to the parties in interest in defending the action. The defendant opened the door for this inquiry, and as long as it was conducted in good faith for a legitimate purpose, the plaintiff was within his rights."

Cf. Baymond v. Sternberger, 116 Pa. Super. 451, 176 A. 787 (1935) ; Guckavan v. Lehigh Traction Co., 203 Pa. 521, 53 A. 351 (1902) ; Jury v. New York Central R. R., 167 Pa.Super. 244, 74 A.2d 531 (1950) ; see generally Annotation, 4 A.L.R.2d 761 (1949).

However, it is questionable whether the above authorities are controlling on the matter now before the Court. In this case, by stipulating to introduction of the plaintiff, Rosalie Brown's, statement without the necessity of formal proof, counsel for the plaintiffs obviated the necessity of calling Mr. Boyle to provide the usual foundation. Moreover, it was counsel for the plaintiffs who demanded that the statement be read into the record in its entirety. Had he not so stipulated, it would have been necessary for the defense to call Mr. Boyle to the stand, at which time the plaintiffs might have cross-examined him at his leisure.

Further, when the defense did call Mr. Boyle to the stand it was merely to testify that a subpoena had been served on Mr. Pendergrass. There was no contradiction of the plaintiffs at this time, since they admitted that they, too, had served Mr. Pendergrass with a subpoena.

Apart from these procedural irregularities, it is the Court's understanding of the pertinent Pennsylvania authorities that it is unnecessary to call the scrivener to the stand where the

plaintiff admits that the document in question is her statement, that she signed it, and, initially, that it is correct. See e. g. Beardsley v. Weaver, 402 Pa. 130, 166 A.2d 529 (1961). The plaintiff, Rosalie Brown, testified that the document was her statement, that it was her signature at the end of it, and that it was taken at the time and on the date indicated. Further, when it was called to her attention that she had stated therein, "I never saw the other car that hit us * * *", she testified that the statement was correct (N.T. 166). This was the only material inconsistency between her examination in chief and the statement, and she admitted that the statement was correct. Cf. Fleischman v. City of Reading, 388 Pa. 183, 130 A.2d 429 (1957). It is extremely doubtful that the Pennsylvania Supreme Court intended, by virtue of *Lenahan* and *Goodis*, to wrest from the trial court its traditional discretion in regulating the scope of cross-examination.

■ Viewing the record in its entirety, as indeed we must on a motion for a new trial, it does not appear that the Court's rulings prejudiced the plaintiffs. Apart from the fact that Boyle was not an insurance adjuster, as such, since he was employed by an independent investigating agency, it was clear to everyone that he was employed on behalf of the defendant, and that he was not in court seeking "abstract justice". Counsel for plaintiffs admitted that this was obvious, and went so far as to tell the Court that "the jury * * * [was] * * * erudite enough to know that there * * * [was] * * * coverage." (N.T. 389). Upon reviewing the plaintiffs' examination of Mr. Boyle, this is apparent (N.T. 446–458). At this state in the proceedings, the suggestion that Mr. Boyle's allegiance was in doubt seems a bit disingenuous.

■ Finally, whether a plaintiff will be allowed to disclose that the scrivener of a statement was an insurance representative is not a matter of black or white. There is an intervening gray area where the Court must exercise its discretion in weighing the potential prejudice from such a disclosure against its utility to the plaintiff. The fact that "everybody knows there is insurance in the case" should not be a determinant. Nor is it a matter of erecting protective barriers around insurance companies. So long as the adjudication of personal injury claims is based on fault, rather than on ability to pay, some regard must be had for the possible prejudice from such a disclosure. Too little is known about the reasoning processes of juries, especially where the plaintiff's physical condition evokes sympathy, to be unmindful of the possibility that human frailty may cause them to base their decisions on factors extraneous to proof of liability.

■ This is not to say that the Court should bend over backward to avoid allowing the plaintiff to disclose this fact. Clearly, where the plaintiff is contradicted as to a material fact regarding the liability of the defendant, and does not admit that the statement he or she gave is correct, ordinarily the plaintiff should be permitted to show the insurance connection of the scrivener, assuming it is done in a procedurally acceptable manner and in good faith. Where, as here, however, a plaintiff admits that the material parts of her statement are true, the Court is bound to exercise its discretion in determining whether the identity of the scrivener is sufficiently relevant to be disclosed.

In this case, upon reviewing the facts, the Court decided against disclosure. Its present review of the record has not convinced it that the plaintiffs were thereby prejudiced, or that it ought to have ruled otherwise under the circumstances.

And now, to wit, this 30th day of September, A.D.1966, it is ordered that the Motion of the Plaintiffs for a New Trial be and the same is hereby denied.