591 A.2d 309

**HAMILL–QUINLAN, INC., trading and doing business as Merrill Lynch Realty**

v.

**Donald F. FISHER and Harry A. Digby, Appellant.**

Superior Court of Pennsylvania.

Argued March 20, 1991.

Filed May 22, 1991.

J. Russell McGregor, Pittsburgh, for appellants.

James P. Sommers, Pittsburgh, for appellee.

Before ROWLEY, President Judge, and WIEAND and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the judgment entered in favor of plaintiff-appellee in a contract action. Appellants raise the following evidentiary claims on appeal:

[I] DID THE TRIAL COURT ERR IN ADMITTING EVIDENCE REGARDING INDEMNIFICATION AGREEMENTS?

[II] WAS THE ADMISSION INTO EVIDENCE OF AN UNDATED COPY OF A DOCUMENT CONTRARY TO THE BEST EVIDENCE RULE AND DID THE TRIAL COURT ERR IN ALLOWING EVIDENCE SURROUNDING THE DOCUMENT?

Brief for Appellants at 3. For the reasons that follow, we affirm.

On September 11, 1985, appellants, Donald F. Fisher and Harry A. Digby, entered into an exclusive, one-year listing agreement with appellee, Hamill–Quinlan, Inc., t/d/b/a Merrill Lynch Realty ("Merrill Lynch"), for the sale of a commercial property in Pittsburgh, Pennsylvania. In addition, the parties executed an addendum that excluded certain individuals and organizations from the listing contract for the first fifteen days of the listing, i.e., until September 26, 1985. In essence, the addendum provided that if Fisher and Digby sold the property to one of the listed persons or organizations on or before September 26, no commission would be due Merrill Lynch. One of the persons identified in the addendum was Ned Shekels. Shekels, as it turned out, was a real estate agent working for another broker, K. Goldsmith and Company (K. Goldsmith). During the one-year listing period, Fisher and Digby entered into an agreement to sell the property to Shekels. On April 7, 1986, Shekels assigned his right to purchase the property to the actual purchaser, RRZ Forsayle & Partners ("RRZ"), and in return K. Goldsmith received a brokerage fee of $13,500. *See* R.R. at 183. The property eventually was conveyed to RRZ by Fisher and Digby in October, 1986, for $230,000.

Thereafter, Merrill Lynch instituted the present contract action, seeking to recover the 10% commission it claimed it was due under its exclusive listing agreement. Fisher and Digby defended on the ground that the sale fell within the exclusion contained in the addendum to the listing agreement. The central issue at trial was whether an enforceable agreement to sell the property to Shekels was reached prior to September 26, 1985. Fisher and Digby attempted to show that an agreement with Shekels had been reached on September 24, 1985. Merrill Lynch both challenged the validity of the supposed September 24 agreement and attempted to show that an enforceable agreement of sale was not reached until April 7, 1986. The case proceeded to a jury trial and, on February 2, 1990, the jury returned a

verdict in favor of Merrill Lynch in the amount of $23,000. The verdict was increased to $27,600 to include pre-judgment interest. Fisher and Digby filed post-trial motions, which were denied, and the molded verdict was reduced to judgment. This timely appeal followed.

Both claims on appeal concern the propriety of the court's evidentiary rulings. As a general matter, the admissibility of evidence is a matter left to the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Leonard by Meyers v. Nichols Homeshield, Inc.*, 384 Pa.Super. 1, 5, 557 A.2d 743, 745 (1989), *appeal denied* 525 Pa. 115, 575 A.2d 115 (1990); *In re Hyduke*, 371 Pa.Super. 380, 389, 538 A.2d 66, 71 (1988); *see also* L. Packel & A. Poulin, *Pennsylvania Evidence*, § 108.1 at 28 (1987 & Supp.1990) (hereinafter "Packel & Poulin"). The erroneous admission or exclusion of evidence alone, however, is not enough to warrant relief; there must also be a showing of harm to the party seeking relief. *See Bessemer Stores, Inc. v. Reed Shaw Stenhouse, Inc.*, 344 Pa.Super. 218, 224, 496 A.2d 762, 765 (1985) (citations omitted); *see also* Packel & Poulin, *supra* § 108.2, at 30. "Consequently, appellants must prove that it was error to admit the challenged evidence and that they were prejudiced thereby." *Bessemer Stores, Inc. v. Reed Shaw Stenhouse, Inc., supra.*

■ Appellants' first claim concerns the court's admission of evidence regarding indemnity agreements. The facts relating to this claim are as follows. On April 21, 1986, the actual purchaser of the property, RRZ, agreed to indemnify appellants from any claims made by Merrill Lynch for commissions on the sale of the property. K. Goldsmith, in turn, agreed to indemnify RRZ for any claims for commission. The effect of the two agreements was that the ultimate liability for any commission due Merrill Lynch was assumed by K. Goldsmith, the employer of Ned Shekels. On the first day of trial, appellants filed a motion *in limine* requesting that the court exclude from trial any reference to the indemnification agreements. The court

denied the motion. As a result of this ruling, appellants chose to introduce evidence of the agreements during their examination of their own witness, Shekels, and Merrill Lynch cross-examined Shekels concerning the agreements.

On appeal, appellants argue that the indemnification agreements were irrelevant to the question whether and when a contract had been formed with Shekels, and that the admission of evidence concerning the agreements was prejudicial because it "was tantamount to the introduction of evidence of insurance." Brief for Appellants at 12. Appellants misconstrue the basis for admission. "It is hornbook law that a witness's motivation or inducement to testify is properly within the scope of cross-examination." *Commonwealth v. Baston*, 242 Pa.Super. 98, 111, 363 A.2d 1178, 1185 (1976) (citing *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931)); *see also Commonwealth v. Robinson*, 507 Pa. 522, 526, 491 A.2d 107, 109 (1985) (cross-examination may be employed to test witness's story, impeach credibility, and establish motive for testifying); *O'Donnell v. Bachelor*, 429 Pa. 498, 502, 240 A.2d 484, 486 (1968) (plurality opinion by Musmanno, J.) ("Once a witness commits himself to the ocean of a legal controversy, he must, under cross-examination, disclose the flag under which he sails"); *Anderson v. Pittsburgh Ry. Co.*, 423 Pa. 550, 555, 225 A.2d 548, 551 (1967) (party's interest may affect credibility, though not competency). As Packel & Poulin have noted:

A witness may be discredited by demonstrating that he or she has a reason to testify falsely. Wigmore classifies the emotions that might cause a witness to give false testimony into three categories: (1) bias, which is a personal attitude favorable or unfavorable to a particular party; (2) interest, which may flow from "[a] relation between the witness and the *cause at issue;*" and (3) corruption or conscious false intent. Bias, interest, and corruption do not render a witness incompetent, but such motives affect the witness' credibility and should be con-

sidered in determining the weight to give his or her testimony. Consequently, evidence that a witness' testimony may be colored by bias, interest, or corrupt motive is nearly always relevant.

Bias, interest, or corruption is usually established by demonstrating circumstances that might naturally lead a witness to favor or disfavor one party in a proceeding. Any evidence that supports an inference of bias, interest or corruption is relevant impeachment evidence. The commonly accepted types of proof relevant to show bias, interest or corruption include: family relationship or other personal connection suggesting favor or hostility, *an employment relationship*, status as a party in the case, *and the possibility of financial gain or loss from the outcome of the case.*

Packel & Poulin, *supra* § 608.3, at 423–24 (emphasis in second paragraph supplied) (footnotes omitted).

Here, Ned Shekels and his employer, K. Goldsmith, were to receive a brokerage fee of $13,500 for finding the ultimate purchaser of the property. The effect of the indemnification agreements, however, was to make K. Goldsmith liable for any commission due to Merrill Lynch. On these facts, an inference arises that Shekels had a direct interest in keeping in the treasury of his employer the money that Merrill Lynch was trying to extract by this action. As the trial court noted, the agreements were "certainly relevant information showing the interest of [Shekels] in the outcome of the lawsuit and went to the credibility of the witness." Trial Court Opinion at 2. In light of these circumstances, the trial court did not abuse its discretion in admitting evidence concerning the indemnification agreements in order to impeach Shekels.[1]

1. The trial court ruling in this case is similar to that found in cases where insurance company employees have been impeached by showing their connection with the company insuring a party to the lawsuit, a practice which our Supreme Court has approved. *See, e.g., O'Donnell v. Bachelor*, supra; *Goodis v. Gimbel Bros.*, 420 Pa. 439, 218 A.2d 574 (1966); *see also* Packel and Poulin, *supra* § 608.3, at 425. The fact that this proper impeachment incidentally exposed the fact that

■ Appellants' second claim concerns the court's admission into evidence of a second copy of the agreement that appellants claimed they had reached with Shekels on September 24, 1985. At trial, appellants introduced a signed letter from Shekels to Fisher concerning the property in question. In the letter, Shekels, *inter alia*, "offered to purchase" the property for $230,000. The date "September 24, 1985" was typed at the top of the letter. In addition, the bottom right hand corner of the letter contained the following notation:

ACCEPTED AND AGREED TO THIS ___ DAY
OF ___, 1985
BY _____

*See* R.R. at 186. This paragraph was executed in Digby's handwriting, listing the date of acceptance as the 24th of September, 1985, and both Digby and Fisher signed below the acceptance. *Id.* Digby testified that the original was not backdated, but was in fact executed on September 24, 1985. On cross-examination, however, Merrill Lynch produced a copy of the September 24 letter, which was identical to the original except for the fact that the handwritten date of September 24 was missing. *Compare* R.R. at 185 *and* R.R. at 186. Over appellants' objection, Merrill Lynch questioned Digby concerning the discrepancy, and Merrill Lynch's copy of the letter was admitted into evidence. The purpose of the cross-examination, obviously, was to call into question the truthfulness of appellants' testimony regarding the time and manner of the execution of the letter, by suggesting that the date was added later in an attempt to defraud Merrill Lynch.

■ Appellants argue that the admission of the copy was erroneous because the original letter already had been admitted, and admission of the copy therefore violated the "best evidence" rule. We have noted that the best evidence rule,

the named defendants themselves would not be responsible for the commission alone is not a basis for exclusion. *See Goodis v. Gimbel Bros., supra; see generally* Packel & Poulin, *supra.*

requires a party who seeks to prove a writing for the purpose of establishing its terms to produce the writing unless the nonfeasability of production is satisfactorily established. *Warren v. Mosites Construction Co.*, 253 Pa.Super. 395, 385 A.2d 397 (1978). Application of the rule is limited to those situations where the *contents* of the document are at issue and must be proved to make a case or provide a defense. *Mars v. Meadville Telephone Co.*, 344 Pa. 29, 23 A.2d 856 (1942); *Perry v. Ryback*, 302 Pa. 559, 153 A. 770 (1931); *Ragnar Benson, Inc. v. Bethel Mart Associates*, 308 Pa.Super. 405, 454 A.2d 599 (1982); *Warren v. Mosites Construction Co., supra.* Where the contents of a document are merely evidence of, rather than material to, issues in the case the rule is inapplicable. *Durkin v. Equine Clinics, Inc.*, 313 Pa.Super. 75, 459 A.2d 417 (1983).

*N.C. Quandel Co. v. Slough Flooring, Inc.*, 384 Pa.Super. 236, 241–42, 558 A.2d 99, 102 (1989); *see also* Packel & Poulin, *supra* § 1001, at 693. The rationale for the rule is readily apparent: in light of the added importance that the fact-finder may attach to the written word, it is better to have available the exact words of a writing, to prevent "the mistransmitting [of] critical facts which accompanies the use of written copies or recollection," and to prevent fraud. *See* Packel & Poulin, *supra*, at 694 (quoting McCormick, *Evidence*, § 231 (3d ed. 1984)).

Here, the court's admission of the copy of the September 24 letter in no way implicated the concerns protected by the best evidence rule. It is undisputed that the supposed "best evidence" of the September 24 letter—i.e., the original letter—in fact *was* introduced by appellants during presentation of their defense, and, of course, the contents of that writing were essential to appellants' defense. Merrill Lynch did not dispute that, by the time of trial, the original contained the handwritten date that appellants said it contained; Merrill Lynch did, however, dispute *when* the date of the acceptance was entered on the original. The copy introduced by Merrill Lynch, which did not contain a date of

acceptance, thus was introduced to call into question the truthfulness of appellants' evidence regarding the time of the acceptance. As Merrill Lynch notes in its brief, "[t]he undated version of the Letter shows that contrary to his testimony, Digby wrote in the date sometime after the original was signed, and after a copy was made of the signatures." Brief for Appellee at 14. The court below properly recognized that the discrepancy between the original and the copy created a question for the jury concerning the truthfulness of appellants' account of the execution of the acceptance, and was relevant to the question of when appellants in fact accepted Shekels' offer to purchase the property. Accordingly, we hold that the trial court did not abuse its discretion in admitting this evidence.

For the foregoing reasons, we affirm the judgment below.

Judgment affirmed.