559 A.2d 71

**ADAMS COUNTY CHILDREN AND YOUTH SERVICES, Petitioner,**

v.

**Sandra L. RUPPERT, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 7, 1989.

Decided May 15, 1989.

John R. White, Campbell and White, Adams County Sol., Gettysburg, for petitioner.

Barbara Sumple–Sullivan, New Cumberland, for respondent.

Before DOYLE and SMITH (P.), JJ., and KALISH, Senior Judge.

DOYLE, Judge.

This is an appeal by the Adams County Children and Youth Services (Appointing Authority) from an order of the State Civil Service Commission (Commission) which re-

versed the determination of the Appointing Authority to remove Sandra L. Ruppert from her position as a Caseworker, probationary status, with the Appointing Authority. The Commission's order directed that Ruppert be reinstated to her position with full back pay.

The Commission found that by letter dated March 3, 1988, Ruppert was removed from her position on a charge of failure to disclose or act upon information regarding an improper caseworker-client relationship. In January of 1987 an allegation of child abuse against the father of the involved child was presented by the child's mother to the appointing authority. Responsibility to investigate this allegation was initially assigned to Ruppert, but at the request of a co-worker, (Karen) and with the approval of Ruppert's immediate supervisor, the case was reassigned to Karen.[1] The Commission specifically found that reports finalizing Karen's investigation were submitted by Karen in February of 1987 and that the case was closed in March of 1987 with the conclusion that the allegations of abuse were unfounded. One year later, on March 2, 1988, the mother of the subject child again contacted the Appointing Authority and was interviewed by Ruppert. The mother alleged abuse by the child's father and asserted that no action had been taken on the prior allegations because of a "friendship" between Karen and the father. On the same day, after this interview had terminated, Ruppert advised her superiors that there had been, "sometime during 1987," "some relationship" between Karen and the father. All of the information pertaining to the relationship between Karen and the father was provided to the Appointing Authority by Ruppert. The Appointing Authority did not contact Karen, who had left the agency.

1. It appears that Karen knew the father and had seen him at church and that her superiors were told this. In fact, the supervisor testified that the case was reassigned to Karen because the children were in her Sunday school class and the Appointing Authority believed that the father might relate better to Karen because of their similar religious beliefs. N.T. 11, 443.

The Appointing Authority based its removal upon its belief that Ruppert, on March 2, 1988, had advised the Appointing Authority that (1) the relationship between Karen and the father took place *during* Karen's 1987 investigation and (2) that Ruppert knew of the relationship during the 1987 investigation but only revealed it to the Appointing Authority after the March 2, 1988 complaint from the mother was filed. The Appointing Authority thus posits that Ruppert's knowledge of a client-caseworker relationship during an ongoing investigation and failure to report it justified her removal from her position.

Ruppert maintains that the Appointing Authority misinterpreted or misunderstood her statements. She contends, *inter alia*, that the relationship developed *after* the investigation was finalized and that any relationship between Karen and the father which may have occurred, was subsequent to the submission of Karen's final report and thus is irrelevant. She further contends that her second level supervisor relied upon her March 2 statements but misunderstood them and refused to accept her later attempts to clarify those statements.

The Commission specifically observed that at the hearing Ruppert testified that to the best of her knowledge the relationship between Karen and the father began *after* the close of the 1987 investigation. We observe that this evidence is supported by Ruppert's testimony on the record. *See* N.T. 43–45. The Commission also noted that under the Appointing Authority's own position while a caseworker-client relationship would be viewed as improper during the course of an investigation, such relationship if it began subsequent to the investigation's closure would be unrelated to the caseworker's employment and, hence, permissible. Therefore, if Karen's relationship with the father occurred after her investigation was closed even if Ruppert knew of the relationship her failure to report it would be of no moment. Thus, as the Commission observed, "resolution of the parties' differing views as to when the Karen/[father] relationship began seems critical to any consid-

eration in this matter." The Commission then went on to find that the Appointing Authority's actions had been based upon unfounded assumptions and inferences taken from Ruppert's statements and further stated, Ruppert, "having presented her statements to this Commission, we find her, by far, the more credible witness with regard to the 1987 Karen/[father] relationship." Thus, the Commission specifically found that the relationship between Karen and the father did not develop until after the investigation had been closed and, therefore, that the Appointing Authority had no basis to remove her for any failure to report such relationship. Accordingly, the Commission reversed the Appointing Authority's removal action and this appeal ensued.

Our scope of review of the Commission's adjudication is limited to determining whether constitutional rights were violated, an error of law was committed and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. Further, we observe that Ruppert was a probationary status employee and, thus, may challenge her removal only by alleging discrimination. *Cunningham v. State Civil Service Commission,* 17 Pa.Commonwealth Ct. 375, 332 A.2d 839 (1975). Ruppert bore the burden of proof in establishing discrimination, 4 Pa.Code § 105.16, but credibility matters are for the Commission to decide, *West Chester State College v. Stein,* 72 Pa.Commonwealth Ct. 561, 457 A.2d 176 (1983).

On appeal the Appointing Authority alleges several bases for reversal of the Commission's order. First, the Appointing Authority maintains that certain of the Commission's findings were not supported by substantial evidence. The first challenged finding relates to the exact date when Karen submitted her report finalizing her investigation. The Commission found that that occurred in February of 1987, and the Appointing Authority maintains that the record demonstrates that it occurred near the end of March 1987. Although we agree that the record could be clearer on this point, we think that pinpointing a specific date is

unnecessary because Ruppert clearly testified that the relationship did not develop until *after* Karen's reports were finalized. Thus, whether this event occurred in February or March is unimportant.

Next, the Appointing Authority challenges the Commission's findings that there had been "sometime during 1987" "some relationship" between Karen and the father. The Appointing Authority contends that Ruppert's supervisor repeatedly testified that Ruppert had informed her on March 2, 1988 very specifically that the relationship between Karen and the father had occurred *during* Karen's investigation, not just "sometime" in 1987. The Commission, however, quite simply chose not to credit this evidence and it was within its province to do so.

The last finding challenged by the Appointing Authority pertains to the finding that the Appointing Authority, subsequent to its learning of Karen's possible infraction, did not contact her (Karen) to determine what in fact had occurred. It contends that the Appointing Authority's witnesses repeatedly testified of their attempts to contact Karen. The fact that there were attempts, does not mean that they were successful and the Commission found only that Karen had not been contacted, not that there had not been an attempt to contact her. This finding is supported by substantial evidence.

■ Next, the Appointing Authority contends that the Commission committed prejudicial error when it refused to apply the rule of law that a party who calls a witness stands behind that witness' credibility and is bound by that witness' testimony. Some background is necessary to understand this contention. Ruppert represented herself at the Commission hearing. As part of her case-in-chief, she called two of her supervisors who testified that Ruppert had told them that the relationship between Karen and the father had been conducted *during* Karen's investigation and that Ruppert knew of the relationship at that time. Ruppert then took the stand and testified that the relationship did not develop until *after* the investigation had termi-

nated. The Appointing Authority argues that Ruppert is bound by the testimony of the two witnesses she herself called because they were "her" witnesses.

The general rule is that a party who calls a witness represents that witness as being credible and worthy of belief and cannot impeach him. However, that rule has been relaxed to prevent injustice and the tendency of the courts now is to permit parties to show the truth without strict regard to the various technicalities. *Commonwealth v. Smith*, 424 Pa. 544, 227 A.2d 653 (1967). *See also* Section 505 of the Administrative Agency Law, 2 Pa.C.S. § 505 (administrative agency not bound by technical rules of evidence). We, thus, believe that Ruppert's testimony was permitted under *Smith*.

Next, the Appointing Authority maintains that the Commission capriciously disregarded competent and substantial evidence.[2] A review of the Commission's adjudication, however, makes it clear that it set forth and explained the Appointing Authority's position and then rejected it on the merits. Thus, we see no way in which the Commission disregarded any evidence. It simply chose to resolve credibility matters in a manner favorable to Ruppert. In this same vein, the Appointing Authority contends that the Commission erred in not specifically discussing Ruppert's motive in coming forward with the Karen/father relationship story. It asserts that only when Ruppert's complacency in the conduct of Karen became a threat to her own employment did she come forward. The fact that the Commission chose not to discuss specifically this theory does not mean that it ignored it or failed to understand it. The Commission is not obligated to recount every shred of evidence in the record.

**2.** We observe that where, as here, both parties presented testimony the capricious disregard standard is inapplicable. *See Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Commonwealth Ct. 436, 550 A.2d 1364 (1988); *Kirkwood v. Unemployment Compensation Board of Review*, 106 Pa.Commonwealth Ct. 92, 525 A.2d 841 (1987).

Finally, the Appointing Authority contends that Ruppert failed to establish discrimination as a matter of law. We note that this case falls under the unusual heading of "mistake of fact discriminations". We have, on previous occasions, dealt with this type of discrimination. Most important for purposes here is *State Correctional Institution at Graterford v. Goodridge*, 87 Pa.Commonwealth Ct. 527, 487 A.2d 1036 (1985). In *Goodridge* the employee had been hired as a corrections officer trainee at Graterford State Correctional Institution. On his application for employment, he was asked whether he had ever resigned from a job after being informed that his employer intended to fire him. He was also asked whether there were any circumstances in his past life which, if they became known, would disqualify him for a position in a corrections institution. Goodridge answered both questions in the negative and was subsequently hired. Thereafter, while doing a background report, the Bureau of Corrections discovered that ten years earlier when Goodridge had been a police officer in New York his commanding officer had asked him to resign after he had taken overdoses of sedatives and accidentally discharged a firearm. Based upon this information, the Bureau of Corrections concluded that Goodridge had falsified his employment application and removed him from his position. He appealed and the Commission directed that he be reinstated. It did so because it found that Goodridge had not lied on his employment application because he had terminated his employment with the New York Police voluntarily and not upon threat of being discharged. It also determined that he was psychologically capable of bearing a weapon. The Commission concluded that the appointing authority's action in dismissing Goodridge was based upon a misapprehension concerning the facts of the termination of his previous New York employment and was thus premised upon a nonmerit factor, rendering it discriminatory. It ordered reinstatement and the Bureau of Corrections appealed.

On appeal to our Court, the Bureau of Corrections did not question the Commission's findings, but contended only that because it sincerely believed, based upon the information it had received, that Goodridge had lied on his application its action in dismissing Goodridge was not a personnel action based upon nonmerit factors. In other words, the Borough argued, it might have been mistaken about the facts, but it was the Bureau's good faith belief as to those facts that was the determinate factor. Thus, the Bureau maintained that the personnel action was work related and not based upon nonmerit factors. We agreed that the Bureau's charges were indeed related to Goodridge's fitness to become a corrections officer, but observed:

[W]e are concerned not with the charges. We are concerned with their basis in fact, which [Goodridge] has been given the right to test by appeal to the Civil Service Commission and which the Commission after hearing found were baseless. This we believe established that his removal was for a non-merit factor. To hold, as the Bureau urges, that although the charges were untrue, its action dismissing him must be upheld, renders his right to appeal a nullity. The Bureau's thesis that because its functionaries believed the charges the removal was not for a non-merit factor rests on the proposition that in order to establish an act of discrimination the victim must show that the Bureau intended to discriminate. The law is clearly to the contrary.

*Id.*, 87 Pa.Commonwealth Ct. at 531–32, 487 A.2d at 1038–39. We, thus, agreed with the Commission that the action of the Bureau, although taken without malice or wrongful intent, had the effect of removing Goodridge from his employment for a nonmerit factor.[3]

3. The *Goodridge* Court further observed that pursuant to the Commission's own appeal form the Commission recognizes "mistake of fact" as a type of discrimination, and that an agency's interpretation of the legislation which it is required to enforce is entitled to great deference.

We have further observed in *Pronko v. Department of Revenue*, 114 Pa.Commonwealth Ct. 428, 539 A.2d 456 (1988), that in cases where the appointing authority commits a mistake of fact type of discrimina-

While in *Goodridge* the facts giving rise to the attempted removal had occurred before Goodridge was hired, we see no legal basis for drawing a distinction between that situation and the one present here. In either situation the employee suffers the same harm, loss of his position, based upon allegations found not to be true. Thus, although the *charges* in both *Goodridge* and the instant case were certainly merit related, when those charges were determined to be factually *unfounded* there no longer existed any merit-based reason to support the personnel action. It is clear that the intent of the Civil Service Act (Act),[4] as enunciated in Section 2 of that Act, 71 P.S. § 741.2, is to premise personnel actions upon job-related criteria. And, where a removal is based upon nonmerit factors, in the form of mistaken facts, it is discriminatory. *Goodridge.*

Thus, having concluded that the charges made by the Appointing Authority were without factual basis, and hence discriminatory, *see Goodridge,* we must uphold the Commission's order.

### ORDER

NOW, May 15, 1989, the order of the State Civil Service Commission in the above-captioned matter is hereby affirmed.

SMITH, J., dissents.

tion intent need not be shown. We explained in *Pronko* that the reason for our holding was that often in cases of this type what has occurred is merely administrative error or mistake and that intent to discriminate could not be shown because it is frequently nonexistent.

4. Act of August 5, 1941, P.L. 752, *as amended.*