596 A.2d 897

**STATE CORRECTIONAL INSTITUTION AT GRATERFORD, DEPARTMENT OF CORRECTIONS, Petitioner,**

**v.**

**George E. MORSE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 31, 1991.

Decided Aug. 6, 1991.

Marcellus J. Matthews, Asst. Counsel, for petitioner.
George H. Morse, pro se.

Before McGINLEY and BYER, JJ., and BARRY, Senior Judge.

## OPINION

BARRY, Senior Judge.

The Pennsylvania Department of Corrections, State Correctional Institute at Graterford (the Department) appeals an order of the State Civil Service Commission (the Commission) which sustained an appeal of George H. Morse and reinstated him to his position as a correctional officer trainee, probationary status.

Morse had been a probationary employee for the Department for approximately ten months when, while on duty, he was involved in a fight with a fellow correctional officer during the 2:00 p.m.–10:00 p.m. shift at the prison. Following an investigation into the incident, the Department discharged Morse, who is black, and took no action against Officer Griffin, who is white and a regular employee. Morse filed an appeal with the Commission alleging that he was fired because of discrimination in violation of Section 905.1 of the Civil Service Act, Act of August 5, 1941, P.L. 752, added by the Act of August 27, 1963, P.L. 1257, 71 P.S. 741.905a, which provides:

No officer or employe of the Commonwealth shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action with respect to the classified service because of political or religious opinions or affiliations because of labor union affiliations or because of race, national origin or other non-merit factors.

Morse has throughout taken the position that he was discriminated against because he was discharged and Griffin was not disciplined.

A hearing was held before the Commission. Morse, who has proceeded pro se, testified that Officer Griffin had

attacked him, which required him to act in self defense. Officer Griffin had allegedly [1] told Morse to release the prisoners in the cell block for meals one section at a time. Morse, who testified that he did not hear the order, released all four sections at once as had been done in the past. Griffin reported the incident to his supervisor, Captain S.A. Williams [2] who called Morse into his office to discuss the incident. After this meeting, Morse went to talk with Griffin and told him that it was essential that they work together as a team and treat each other in a professional manner and "to keep his personal prejudices and racisms to himself and to be more concerned about getting the job done." (Notes of Testimony, 7/31/90, p. 13). At this point, according to Morse's testimony, Griffin lunged at him and he had to defend himself. Fellow officers Zimmer and Fetterman broke up the fight. Both officers testified at the hearing and stated that they did not know who had started the fight.

The Department presented two witnesses on its behalf. Steven Reilly, a personnel officer at the prison, testified that different standards applied to the termination of probationary and regular employees; just cause was required to terminate a regular employee while the standard was less strict with regard to a probationary employee such as Morse. He stated that Morse was terminated because of a violation of Section B(11) of the Department's Code of Ethics which states, "Employes are expected to treat their peers, supervisors and the general public with respect and conduct themselves properly and professionally at all times;

1. Griffin did not testify at the hearing before the Commission. At that hearing, the letter which informed Morse that he was being discharged was admitted without objection; that letter stated that Morse had disobeyed an order without specifying who gave the order. Morse himself testified that Griffin had told him something which he could not hear because of the noise in the prison.

2. Captain S.A. Williams did not testify at the hearing. The Department presented the testimony of Captain R.C. Williams, the officer who initially investigated the incident. Again, Morse corroborated all of these allegations in his own testimony.

unacceptable conduct or insolence will not be tolerated."[3] Although he did not conduct the investigation into the fight, Mr. Reilly testified that Morse was terminated while Griffin was not disciplined because he thought it would be fair to say that the information supplied by Griffin was given more weight than the information of Morse. (N.T., p. 48). Mr. Reilly specifically denied that racial considerations were involved in Morse's termination. Captain R.C. Williams, who investigated the incident, testified that his report "didn't reveal as to who was doing what other than they were engaged [in a fight]." (N.T., p. 55–56). When asked who completed the investigation into the incident, he stated, "Internal security probably did some investigation on it. I couldn't speak on that. But my investigation was completed upon the point of suspension." (N.T., p. 57).

The Commission entered its order reinstating Morse on November 8, 1990. In its adjudication it explained:

> The [Department] has presented no evidence to refute [Morse's] testimony that he did not start the fight.[3] In addition, the [Department] failed to explain adequately why it removed [Morse], but dismissed the charges against Griffin. We find the evidence supports that the [Department] discriminated against [Morse] by singling him out for punishment.[4]

---

[3] The Commission may draw an inference from the [Department's] failure to call Griffin as a witness that the testimony given would have been unfavorable to the [Department]. *Murphy v. Commonwealth, White Haven Center, Department of Public Welfare,* 85 Pa.Commonwealth Ct. 23 [480 A.2d 382] (1984).

[4] There is no evidence to support [Morse's] claim of racial discrimination.

(Adjudication and Order of the Commission, 11/8/90, p. 3). The Department filed a timely appeal to this Court.

In *Adams County Children and Youth Services v. Ruppert,* 126 Pa.Commonwealth Ct. 163, 167, 559 A.2d 71, 73 (1989), we stated:

**3.** Morse was never charged with disobeying the order to release the prisoners within the cell block one section at a time.

Our scope of review of the Commission's adjudication is limited to determining whether constitutional rights were violated, an error of law was committed and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. Further, we observe that Ruppert was a probationary status employee and, thus, may challenge her removal only by alleging discrimination. *Cunningham v. State Civil Service Commission*, 17 Pa.Commonwealth Ct. 375, 332 A.2d 839 (1975). Ruppert bore the burden of proof in establishing discrimination, 4 Pa.Code § 105.16, but credibility matters are for the Commission to decide, *West Chester State College v. Stein*, 72 Pa.Commonwealth Ct. 561, 457 A.2d 176 (1983).

 The Department argues that the Commission erred in considering who had started the fight. According to the Department's argument, Morse had alleged only *racial discrimination* and having failed to prove it, the Commission was required to affirm the Department's termination of Morse. In support of its position, the Department relies upon the principle set forth in *Hunter v. Jones*, 417 Pa. 372, 207 A.2d 784 (1965) and *Cunningham v. State Civil Service Commission*, 17 Pa.Commonwealth Ct. 375, 332 A.2d 839 (1975), that one appealing to the Commission must specifically recite the basis underlying the claim of discrimination and prove that discrimination before the Commission. In the form filed with the Commission appealing the Department's dismissal, Morse stated, "I was fired because I'm black and under probation. The other employee was not fired; He is white. My termination was a result of a physical altercation; which I did not start!" The form also contains other blocks to check, including, inter alia, blocks for "Race" and "Other Non–Merit Factors". Morse checked only the block for "Race". Although the Department in its brief does not explicitly argue that this constitutes a waiver of the Commission's ability to consider

"Non–Merit Factors", the argument is certainly implicit.[4] We reject it because Morse, who pro se has done an able and admirable job of representing himself, has set forth with particularity the facts which show discrimination on non-merit factors. *Henderson.*

■ We believe this case is closely akin to *Ruppert.* In that case, we explained that where the employee proves that the employer has taken action against an employee based upon a mistake of fact the employee has met his or her burden of proving discrimination based upon non-merit factors. In *Ruppert,* the employee was discharged for failing to take action when she knew that an investigator for Children and Youth Services was involved in a relationship with the individual she was investigating. Rupert proved to the Commission's satisfaction that she knew only that the relationship commenced after the investigation had been completed. The employer there had admitted that there was no work rule forbidding a relationship between the caseworker and the person being investigated after the investigation had been closed.

In *Ruppert,* we relied upon our decision in *State Correctional Institution at Graterford v. Goodridge,* 87 Pa.Commonwealth Ct. 527, 487 A.2d 1036 (1985). In that case, Goodrich had been asked on his application for employment if he had ever resigned from a job after being informed that he would otherwise be fired. He answered no to that question. It was later discovered that he had been asked to resign as a policeman and had voluntarily done so. The Commission accepted as credible Goodrich's explanation that no threat of discharge had been made; therefore the Commission concluded that Goodrich had not falsified any

4. The Department does argue that the Commission erred in denying the Department's motion to dismiss following the presentation of Morse's case; this argument is based upon the Commission's factual finding that racial discrimination was not involved. We need only state that Morse established his prima facie case merely by showing that he was discharged and the white employee involved in the same fight was treated differently. *See Henderson v. Office of the Budget,* 126 Pa.Commonwealth Ct. 607, 560 A.2d 859 (1989).

answers on the form, falsification being the justification for Goodrich's termination. As we stated:

> To hold, as the Bureau urges, that although the charges were untrue, its action dismissing him must be upheld, renders his right to appeal a nullity. The Bureau's thesis that because its functionaries believed the charges the removal was not for a non-merit factor rests on the proposition that in order to establish an act of discrimination the victim must show that the Bureau intended to discriminate. The law is clearly to the contrary.

*Id.*, 87 Pa.Commonwealth Ct. at 531–32, 487 A.2d at 1038–39.

A review of the Commission's adjudication, particularly the portion quoted earlier in this opinion, shows that the Commission in its role as fact finder believed Morse's testimony that he was only defending himself when he was involved in the fight with Griffin. His involvement in the fight, therefore, was not a violation of the Department's Code of Ethics. Because Morse has met his burden of proving that he was terminated because of the Department's mistake of fact and therefore was discriminated against on the basis of a non-merit factor, we affirm the Commission's order.

## ORDER

NOW, August 6, 1991, the order of the State Civil Service Commission, dated November 8, 1990, at Appeal No. 8914, is affirmed.