IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela M. Allen,                          :
                          Petitioner      :
                                          :
        v.                                :   No. 839 C.D. 2022
                                          :   Submitted: May 12, 2023
State Correctional Institution at         :
Somerset, Department of                   :
Corrections (State Civil Service          :
Commission),                              :
                          Respondent      :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                  FILED:  November 14, 2023

        Angela M. Allen (Petitioner) has filed a petition for review, challenging
the adjudication of the State Civil Service Commission (the Commission), which
upheld her removal from probationary employment as a Corrections Officer Trainee
(COT) with the State Correctional Institution at Somerset (SCI-Somerset).
Petitioner contends that her removal was motivated by retaliation and/or disparate
treatment.  After careful review, we affirm.

## I. BACKGROUND[1]

        Petitioner was employed as a COT on October 5, 2020, at SCI-
Somerset.  As a condition of employment, all COTs are required to abide by the
appointing authority's policies.  These policies include an employee's responsibility

---

[1] We base the statement of facts on the Adjudication of the State Civil Service Commission,
which is supported by the record.  *See* Adjudication, 6/27/22, at 1-26.

to secure keys to her person and not in pockets, desks, or purses. Further, an employee must provide an immediate verbal report to a shift commander upon losing any keys, key cards, or key rings, and provide a written report at the end of the shift. Petitioner's academy training was interrupted from November 2020 through January 2021, and she began to experience issues with staff in March 2021.

On March 5, 2021, Petitioner participated in an administrative interview regarding allegations of sexual harassment in the workplace initiated by a fellow COT, Kristy Lambert.[2] Petitioner was questioned by superior officers and, at the conclusion of the interview, made a written statement.

On March 15, 2021, Petitioner was advised that she needed to maintain appropriate control of her equipment after leaving her utility belt, complete with pepper spray and handcuffs, in a bathroom accessible by prisoners. On April 8, 2021, Petitioner was relieved from duty on a housing unit after she failed to follow orders and violated post orders; additionally, she left her utility belt unattended in a yard bathroom for a second time. On April 26, 2021, Petitioner lost her key chit and did not immediately report the loss as required by Department of Corrections (Department) policy.[3] On May 5, 2021, Petitioner lost her personal vehicle keys at the prison's metal detector for four hours. On May 13, 2021, Petitioner finally filed the DC-121 report for the chit she had lost seventeen days earlier. The chit was recovered on May 17, 2021.

On May 25, 2021, Petitioner received a written reprimand for the incidents that occurred on April 8, 2021. Petitioner received a pre-disciplinary

---

[2] These allegations did not implicate Petitioner; she merely participated as a witness.

[3] On May 11, 2021, Petitioner received a "fact-finding meeting" regarding the loss of the chit and failure to follow procedure and report it lost by filing a DC-121 report. She filed her report two days after the meeting.

conference (PDC) notice and participated in the PDC on July 1, 2021. At the PDC, Petitioner testified in her own defense and presented the testimony of former COT Kristy Lambert,[4] Correctional Food Service Instructor Tiffany Thompson, and Corrections Officer 2 Eric Huber. The Department presented the testimony of Corrections Officer 3 Robert Munion. Petitioner claimed that she had experienced retaliatory and disparate treatment from supervisors and coworkers following her participation in the administrative interview held on March 5, 2021. In response, Officer Munion testified to Petitioner's failures to follow security protocols despite repeated warnings and that he was unaware of Petitioner's participation in the administrative interview.

Following the PDC, on July 15, 2021, Petitioner was dismissed from employment. The Department cited, as reasons for her removal: (1) failure to report a lost key chit; (2) failure to report that she was missing her personal vehicle keys for several hours; (3) admission to keeping keys in her pockets; (4) failure to pay close attention to all information presented by the training staff; (5) failure to execute each duty on her posts faithfully and conscientiously, (6) failure to strive to improve identified areas of performance deficiency, and (7) failure to observe and follow Department policies, procedures, and local procedures.

Petitioner filed a petition for reinstatement and appealed her dismissal to the Commission. On June 27, 2022, the Commission issued its final decision, dismissing Petitioner's appeal and concluding that Petitioner did not establish a *prima facie* case of disparate treatment or retaliation, and even if she had established a *prima facie* case, the Department had provided legitimate, non-discriminatory

---

[4] Lambert resigned on May 11, 2021.

reasons for her removal. *See* Adjudication, 6/27/22, at 23-26. Petitioner timely petitioned this Court for review.

## II. ISSUES

Petitioner raises two issues for review. First, she contends that the Commission erred when it denied her petition for reinstatement, because prison officials had retaliated against her for participating in an Equal Employment Opportunity (EEO) investigation involving a colleague's sexual harassment/assault case. *See* Pet'r's Br. at 4, 8-9. Second, Petitioner contends that there was substantial evidence in the record supporting her claim that her discharge was based upon discriminatory intent and disparate treatment.[5] *See id.* at 4, 8.

---

[5] Initially, we note the deficiencies of Petitioner's brief. Pa.R.A.P. 2119 requires that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part-in distinctive type or in type distinctively displayed-the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). Although Petitioner lists two questions to be argued, she presents her argument under a single heading, and does not meaningfully address her claim regarding disparate treatment, nor provide any legal authority supporting it. *See* Pet'r's Br. at 9-12. Further, in her argument regarding retaliation, she discusses extensively a Ninth Circuit hostile work environment matter, and a case from this Court concerning an unemployment matter where sexual harassment provided a necessitous and compelling cause for the claimant to quit her job, both of which are irrelevant to the matter at hand. *See* Pet'r's Br. at 9-10 (citing *Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006); *Comitalo v. Unemployment Comp. Bd. of Rev.*, 737 A.2d 342, 343 (Pa. Cmwlth. 1999)).

While this Court construes *pro se* filings liberally, Petitioner has the benefit of counsel and, regardless, it is not this Court's function to develop a party's arguments. *C.M. v. Pa. State Police*, 269 A.3d 1280, 1285 (Pa. Cmwlth. 2022). Accordingly, Petitioner risks waiver due to the severe deficiencies of her brief. However, as we may make sense of the general claims Petitioner attempts to raise on appeal, we decline to find waiver in this instance.

## III. DISCUSSION[6]

The statute commonly known as the Civil Service Reform Act prohibits discrimination by officers or employees of the Commonwealth against any individual in "recruitment, examination, appointment, training, promotion, retention, or any other personnel action" with respect to "the classified service because of race, gender, religion, disability or political, partisan or labor union affiliation or other non-merit factors." *See* 71 Pa.C.S. § 2704. Traditional discrimination, as asserted in this instance, encompasses claims of discrimination based on various non-merit factors. *See Price v. Luzerne/Wyoming Cntys. Area Agency on Aging*, 672 A.2d 409, 411 n.4 (Pa. Cmwlth. 1996).

### A. Retaliation

Petitioner first argues that her petition for reinstatement should have been granted because she provided supporting evidence that correctional officers had acted in a retaliatory manner against her. *See* Pet'r's Br. at 9. Petitioner contends that this harassment was the reason she lost her keys and chit and that this would not have happened if the harassment was not taking place. *See id.* at 10-11. Further, Petitioner contends that she has "after-discovered evidence" in her case, which proves that witnesses were untruthful about the circumstances surrounding her lost keys and that several supervisory officers and administrators wanted Petitioner terminated. *See id.* at 12. Finally, she contends that the statements of

---

[6] "The standard of review involving agency adjudications is limited to a determination of whether constitutional rights have been violated, errors of law have been committed, or whether the findings of the agency are supported by substantial evidence." *Pennsylvania Dep't of Corr. v. State Civ. Serv. Comm'n (Clapper)*, 842 A.2d 526, 531 n.7 (Pa. Cmwlth. 2004) (citation omitted). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Civil Service Commission v. Poles*, 573 A.2d 1169, 1172 (Pa. Cmwlth. 1990).

Officers Matthew J. Foster and Washabaugh[7] were not made available to her at the first proceeding. *See id.*

The Department responds that Petitioner's retaliation claim is without merit. *See* Dep't's Br. at 8-9. According to the Department, Petitioner cannot establish a *prima facie* case of retaliation because she cannot prove a causal connection between her participation in the administrative interview and her subsequent dismissal. *See id.* The Department avers that the Commission correctly found the temporal proximity between these events too attenuated and that Petitioner did not provide sufficient evidence to otherwise establish causation. *See id.* at 9-10. Further, the Department asserts that Petitioner was dismissed for legitimate, non-discriminatory, merit-based reasons. *See id.* at 10.

A petitioner may establish a *prima facie* case of retaliation by proving the following: 1) she engaged in a protected activity; 2) the appointing authority was aware of the protected activity; 3) that subsequent to participation in the protected activity, she was subjected to an adverse employment action by the appointing authority; and 4) that there is a causal connection between participation in the protected activity and the adverse employment action. *Robert Wholey Co. v. Pa. Hum. Rels. Comm'n*, 606 A.2d 982, 983 (Pa. Cmwlth. 1992). Further, "[w]hen participation in a protected activity and the occurrence of an adverse employment action occurs within close proximity in time, causation is inferred." *See id.* at 984 (citation omitted).

"Once the complainant makes this initial case, the burden then shifts to the employer to articulate some legitimate, non-discriminatory motive for its action. If the employer does so, the complainant is then given the opportunity to demonstrate

---

[7] Officer Washabaugh's first name does not appear of record.

6

that the proffered reasons were pretextual." *Spanish Council of York, Inc. v. Pa. Hum. Rels. Comm'n*, 879 A.2d 391, 397 (Pa. Cmwlth. 2005).

Instantly, there is no dispute that Petitioner was engaged in a protected activity when she participated in the administrative interview; that the appointing authority was aware of the protected activity; and that she subsequently suffered an adverse employment action, namely, her dismissal, approximately four months later. However, the Commission determined that the temporal proximity between her interview and her dismissal was "too distant in time to infer causation." Adjudication at 23. The Commission therefore concluded that Petitioner had not established a *prima facie* case of retaliation. *Id.*

Petitioner has not challenged the Commission's determination regarding temporal proximity on appeal. *See generally* Pet'r's Br. Further, the Department's analysis is cursory. *See* Dep't's Br. at 9 ("[A]s the [Commission] . . . correctly found, the temporal proximity between these two events [is] too distant in time in order for the fourth prong, causation, to be inferred."). On this record, and in light of the paucity of arguments addressing the Commission's determination, we decline to affirm the Commission on this ground.[8] *See C.M. v. Pa. State Police*, 269 A.3d 1280, 1285 (Pa. Cmwlth. 2022) ("[A]ppellate courts are neither obliged, nor even particularly equipped, to develop an argument for a party. To do so places the Court in the conflicting roles of advocate and neutral arbiter.") (cleaned up).

Nevertheless, assuming Petitioner established a *prima facie* case, the Department provided legitimate, non-discriminatory reasons for her removal, supported by substantial evidence of record. The Commission's adjudication

---

[8] This Court has previously determined that a three-month period between a protected activity and an adverse employment action is sufficiently close in time to infer a causal connection. *See Robert Wholey Co.*, 606 A.2d at 984.

7

summarizes in extensive detail Petitioner's history of misconduct and failure to secure her equipment, her supervisory officers' attempts to inform her of her responsibility to secure said equipment, and her continued failure to adhere to her responsibilities as a COT. *See* Adjudication at 23-25; *see also* Notes of Testimony (N.T.) 116, 177, 180, 196-98, 201-16, 221, 225-28. Petitioner provided no evidence that these proffered reasons were pretextual.[9] *See Spanish Council of York, Inc.*, 879 A.2d at 397. Accordingly, Petitioner has not proven that her removal from the COT program was motivated by a retaliatory purpose. *See id.*; *Robert Wholey Co*, 606 A.2d at 983.

---

[9] To the extent that Petitioner argues that this Court should consider "after-discovered evidence" and has attached several written statements dated from May 2021 by staff, we reject her contention that they should be considered. We review the denial of a request to present after-discovered evidence for an abuse of discretion. *Pawk v. Dep't of Env't Res.*, 395 A.2d 692 (Pa. Cmwlth. 1978). "It is long settled that a petition to re-open judgment . . . on the basis of after-discovered evidence, will only be granted where that evidence: (1) is new; (2) could not have been obtained at trial in the exercise of due diligence; (3) is relevant and non-cumulative; (4) is not for the purposes of impeachment; (5) and must be likely to compel a different result." *In re Cook*, 527 A.2d 1115, 1116 (Pa. Cmwlth. 1987) (emphasis added).

Petitioner does not provide any information or argument regarding the witness statements beyond boilerplate assertions of the five factors listed above. The statements are not new, and Petitioner does not provide reasons they could not be ascertained with due diligence. She claims that two correctional officers "lied about what transpired when [Petitioner] could not find her keys" but does not further elaborate on either the lies or, indeed, what happened when Petitioner could not find her keys, Pet'r's Br. at 12, nor does it appear that Petitioner ever petitioned the Commission to re-open the judgment and consider these statements.

An appellate court is limited to considering only facts that have been duly certified in the record on appeal and, for purposes of appellate review, that which is not part of the certified record does not exist. *City of Pittsburgh Comm'n on Hum. Rels. v. DeFelice*, 782 A.2d 586, 593 n.10 (Pa. Cmwlth. 2001). Documents attached to a brief as an appendix or reproduced record may not be considered by an appellate court when they are not part of the certified record. *Stabler Dev. Co. v. Bd. of Supervisors of Lower Mt. Bethel Twp.*, 695 A.2d 882, 887 n.5 (Pa. Cmwlth. 1997). Accordingly, we decline to consider the statements attached to Petitioner's brief and reproduced record.

**B. Disparate Treatment**

Petitioner contends that she provided evidence that correctional officers acted in a discriminatory manner towards her. *See* Pet'r's Br. at 4, 9. In her brief to this Court, Petitioner offers no specific argument or evidence to support this contention. *See generally id.* at 11 (baldly suggesting that she was disciplined for conduct that others were not). Nevertheless, at the PDC, Petitioner described incidents that she believed resulted in disparate treatment of others. *See, e.g.*, N.T. at 95-101 (testifying that other COTs, including Lambert, were not disciplined for permitting inmates on the grass and that other COTs, like Lambert and Brown,[10] were not disciplined for lacking a key chit).

The Department responds that this claim is without merit, focusing on Petitioner's comparison between Petitioner and Lambert. *See* Dep't's Br. at 14-15. According to the Department, Petitioner was not removed simply for losing her key chit, but for a string of misconducts where she continually lost or misplaced her equipment in dangerous areas. *See id.* Further, the Department asserts that Petitioner and Lambert were not similarly situated. *See id.* (suggesting that Petitioner lost her key chit and failed to properly document its loss, whereas Lambert never received her key chit; thus no documentation was required).

To establish a *prima facie* case that her termination resulted from disparate treatment, a petitioner must establish that she was treated differently than a similarly situated coworker. *State Corr. Inst. at Graterford, Dep't of Corr. v. Morse*, 596 A.2d 897, 899 n.4 (Pa. Cmwlth. 1991); *see also Dep't of Health v. Ngwogwugwu*, 594 A.2d 847, 851 (Pa. Cmwlth. 1991).

---

[10] COT Brown's first name does not appear of record.

Instantly, the Commission credited testimony from Lambert, Huber, and Munion that differentiated the circumstances of Lambert's misplaced key chit from those of Petitioner. *See* Adjudication at 24-25. Thus, the Commission concluded that Petitioner was not similarly situated to Lambert. *Id.* Further, the Commission noted that Petitioner was not disciplined for permitting inmates on the grass. *See id.* at 25.

The evidence supports the Commission's conclusion. While Petitioner lost a key chit in her possession for multiple days, Lambert's key chit was misplaced by the Security Control Center. *See, e.g.*, N.T. at 172-81 (testimony from Huber), 205-10 (testimony from Munion). Further, there is no evidence or testimony that Petitioner was disciplined or terminated for permitting inmates on the grass. *See generally* N.T. Therefore, Petitioner did not establish a prima facie case of disparate treatment. *Morse*, 596 A.2d at 899 n.4; *Ngwogwugwu*, 594 A.2d at 851.

## IV. CONCLUSION

For the foregoing reasons, Petitioner did not prove retaliation or that her dismissal was due to discriminatory reasons. We therefore affirm the adjudication of the State Civil Service Commission, dismissing Petitioner's petition for reinstatement.

_____
LORI A. DUMAS, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela M. Allen, : 
              Petitioner : 
            : 
        v. : No. 839 C.D. 2022
            : 
State Correctional Institution at : 
Somerset, Department of : 
Corrections (State Civil Service : 
Commission), : 
          Respondent : 

# **O R D E R**

AND NOW, this 14th day of November, 2023, the order of the State Civil Service Commission, dated June 27, 2022, is hereby AFFIRMED.

 

 

LORI A. DUMAS, Judge